Harold E. Lund, Plaintiff-Appellant, v. E. D. Etnyre & Co., an Illinois Corporation, Defendant-Appellee.

Gen. No. 68–28.

Second District.

December 10, 1968.

Rehearing denied January 9, 1969.

Reno, Zahm, Folgate and Skolrood, of Rockford, for appellant.

Wolfe, Hubbard, Voit and Osann, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

Plaintiff brought suit for an accounting for commissions that were allegedly due him on the sale of certain machines. The defendant filed a motion to dismiss the complaint under section 48 of the Civil Practice Act (Ill Rev Stats 1967, c 110, § 48(g)). The sole ground of the motion was that the agreement sued upon by the plaintiff violated the Statute of Frauds, in that it was an agreement which could not have been performed within one year. Section 48 provides that, where the grounds for dismissal do not appear on the face of the pleading attacked, as here they did not, the motion may be supported by affidavits, and that procedure was followed here. Defendant filed affidavits in support of its motion, and the plaintiff filed counteraffidavits. The trial court then entered an order granting defendant's motion and dismissing the complaint with prejudice. Plaintiff appeals from that order.

The basic facts of the case, as they appear from the complaint and the affidavits, are simple. The plaintiff, Harold Lund, was at one time employed by the Koehring Company, a manufacturer of road building equipment. One type of machine manufactured by Koehring was a "chipspreading" machine, the function of which is to spread rock chips on a road surface which has been freshly sprayed with liquid bitumen or asphalt. It appears that plaintiff played a major role in the design and manufacture of the chipspreader marketed by Koehring and, while he was employed by this company, he executed a restrictive covenant not to compete, which, so far as it is relevant to this case, purported to restrict him from engaging in the design or manufacture of any competing chipspreader at any time before September 1, 1962.

In January of 1960, plaintiff voluntarily left the employ of Koehring, and began corresponding with one of defendant's officers concerning the possibility of going to work for defendant. Finally, on June 20, 1960, as a result of a meeting at defendant's offices in Oregon, Illinois, plaintiff was hired by the defendant. The defendant was represented at this meeting by Joseph McCoy and Horace H. Etnyre, two of its officers. Both sides agree that an oral agreement was entered into at that time, whereby plaintiff was employed at a salary to work for the defendant in areas which were apparently outside the scope of his restrictive covenant with Koehring. Plaintiff alleges, and the supporting affidavit of McCoy (who is no longer employed by defendant) confirms, that it was further agreed at this meeting of June 20, 1960 that, as soon as plaintiff was free of his restrictive covenant with Koehring, he would design a chipspreading machine to be marketed by the defendant, and that he would receive a royalty of $200 on each machine sold by defendant. The affidavit of Horace H. Etnyre admits that the matter of a chipspreading machine was discussed, but states that it was deferred until a later time,

and denies that the royalty agreement claimed by plaintiff was made.

Plaintiff began work pursuant to the oral agreement, and was paid his regular salary. Then, in May of 1962, about four months before the restrictive covenant expired, plaintiff began work on the design of a chipspreader. Plaintiff alleges that he began this work at the request of defendant, and this is not denied by defendant. Plaintiff alleges, and defendant does not deny, that he did design the chipspreader, that the machine was manufactured according to his design, and was ready for marketing by the fall of 1963. It is further alleged and undenied, that since that time a substantial number of the machines designed by plaintiff have been sold by the defendant, and that defendant has refused to pay any royalties to plaintiff. He left defendant's employ largely because of this refusal.

Although it is not dispositive of any question before us, it is of interest to note that plaintiff and defendant were sued by Koehring in the federal court, based upon alleged patent infringement, misappropriation of trade secrets, and other unfair competition. Koehring Co. v. E. D. Etnyre & Co., 254 F Supp 334 (1966). One of the grounds of the complaint in that case was the breach of the restrictive covenant, and, although the court found that Koehring had failed to prove a case of patent infringement, misappropriation of trade secrets or the like, it did find Lund and Etnyre liable for breach of the restrictive covenant, and entered judgment against them, jointly, for $2,475 as the amount found due as liquidated damages under the provisions of the restrictive covenant. The court, at pp 362–363, further found that Koehring had failed to show any actual damages proximately resulting from Lund's breach of the restrictive covenant.

On the facts set forth in the complaint and the opposing affidavits, we think the law in regard to the applicability of the Statute of Frauds is clear. The pro-

vision involved is the part of section 1 (Ill Rev Stats 1959, c 59, § 1), which provides:

> "That no action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

Plaintiff does not dispute that the clear terms of the oral agreement in regard to the royalties provided that he was not to start work on the chipspreader until after September 1, 1962, the date his covenant expired. Thus, the date that he would begin performance on the chipspreader design was more than two years after June 20, 1960, the date the oral agreement was made. Plaintiff argues that, since he could have started designing the chipspreader immediately, as a physical matter, notwithstanding the terms of his agreement, this means that the agreement "could" have been performed within the year. In support of his position, he cites authorities for the proposition that, if the agreement is capable of performance within a year, the Statute does not apply. Plaintiff misunderstands this line of cases, however, because they are not referring to a physical possibility of doing the work contemplated in a shorter time than that specified in the agreement. Rather, it is a question of whether, *pursuant* to the terms of the agreement, performance is possible within a year. "The Statute does not apply if it appears from a reasonable interpretation of the *terms of the agreement* that it is capable of being performed within a year." (Emphasis added.) Hall v. Gruesen, 22 Ill App 2d 465, 470, 161 NE2d 345 (1959). Here, on plaintiff's own allegations, he could not have performed the agree-

ment within a year of its making because, by its terms, he was not to start until more than two years after its making. It is, of course, the date the agreement is made, rather than the date performance is started, that marks the beginning of the year. Thus, even though plaintiff might have completed design of the chipspreader in less than a year, once he got started, (as it appears he actually did), this is irrelevant. The relevant inquiry is whether he could have performed the agreement according to its terms within a year from the date of the agreement. The rule is illustrated by Sinclair v. Sullivan Chevrolet Co., 31 Ill2d 507, 202 NE2d 516 (1964), where the complaint alleged that plaintiff entered into an oral agreement on May 30, 1960, whereby he was to be employed as defendant's sales manager for a one year period starting June 6, 1960. The court held that this contract was within the Statute of Frauds since it could not have been performed within one year from the date it was entered into. For similar holdings, see Chadwick v. Morris & Co., 170 Ill App 569, 570 (1912) and Haynes v. Mason, 30 Ill App 85, 87 (1889). We conclude, therefore, that the agreement in this case did call for performance which could not be completed within a year.

■■ If the uncontradicted allegations in the complaint and supporting affidavits did not establish that the plaintiff has fully performed his part of the agreement, we would affirm the dismissal by the trial court. However, the complaint and the supporting affidavits do allege that plaintiff designed the chipspreader and that many machines have been sold by the defendant. This is not denied by the defendant. Accordingly, this case falls within the rule that, even though the oral agreement violates the Statute of Frauds, nonetheless, where one party has fully performed the agreement, the other party will be estopped to rely upon the Statute. Collins v. Addicks, 351 Ill App 266, 270–271, 114 NE2d 801 (1953). Defend-

ant argues that plaintiff did not fully perform his part of the agreement, inasmuch as he eventually resigned from defendant's employ. However, the employment agreement itself was terminable at will, and plaintiff was under no obligation, insofar as his regular work was concerned, to remain in defendant's employ for any particular period of time. The performance of his regular duties is not in issue in this case. The only question of performance is in regard to the designing of the chipspreader, and, on the present state of the record at least, it is undenied that plaintiff did fully perform that part of the alleged agreement. The fact that he resigned from defendant's employ after completing the design for the chipspreader is entirely unrelated to the question of whether he did everything he was required to do to become entitled to the royalties.

We are not called upon at this time to decide the question of what effect, if any, plaintiff's breach of his covenant with Koehring has upon his standing to recover against Etnyre. There are cases in which it would offend public policy to allow a plaintiff to predicate an action against one person upon conduct which constitutes a breach of duty toward another person. We do not believe that it can be said categorically that a plaintiff who breaches a restrictive covenant with his former employer is thereby barred from recovering compensation earned (in violation of the covenant) from a new employer. Much will depend upon the facts of the individual case. See, e. g., the differing points of view expressed in the separate concurring opinions in Reiner v. North American Newspaper Alliance, 259 NY 250, 181 NE 561 (1932) and the annotation on that case at 83 ALR 32.

For the foregoing reasons, the judgment of the lower court is reversed, and the case is remanded for further

proceedings in accordance with the views expressed in this opinion.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.