LIBBY-BROADWAY DRIVE-IN, INC., *et al.*, Plaintiffs-Appellants, *v.* McDONALD'S SYSTEM, INC., *et al.*, Defendants-Appellees.

First District (3rd Division) No. 78-1439

Opinion filed March 28, 1979.—Rehearing denied June 27, 1979.

John M. Bowlus and Lynn A. Goldstein, both of Cotton, Watt, Jones, King & Bowlus, of Chicago, for appellants.

Frederic S. Lane, Lawrence R. Samuels, and Thomas M. Fitzpatrick, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County granting defendants' motion for summary judgment on both counts of plaintiffs' third amended complaint. The trial court found the alleged oral agreement which formed the basis of count I to be unenforceable as a matter of law. As to count II, the court found that defendants did not grant a franchise to a third party to operate a restaurant within the exclusive territory granted to plaintiffs.

The parties are as follows: plaintiffs are Libby-Broadway Drive-In, Inc., and four individuals who are or were formerly shareholders in several corporations, including Libby-Broadway, licensed to operate

franchises for defendant McDonald's. Defendants are McDonald's System, Inc., which is the franchisor under which plaintiffs, as assignees, conducted their business, and Franchise Realty Interstate Company, which is the owner and lessor of the property and store leased by plaintiffs for use in their business. Defendants hereafter will be referred to collectively as "McDonald's."

In July 1967, plaintiffs purchased an assignment of the franchises for two existing McDonald's restaurants in Cleveland, Ohio. One restaurant was located at Libby and Broadway Avenues and the other at 8230 Euclid Avenue. In October 1968, plaintiffs were given an option to operate a franchise to be developed at 107th and Euclid Avenue. The Euclid locations were in primarily black neighborhoods.

In 1969 various activist groups began to exert pressure upon McDonald's to make franchises available to black owners. They also demanded that existing franchises located in black areas be sold to black businesses or individuals. The demands were accompanied by threats of violence and arson. In July 1969, picketing and boycotts began at plaintiffs' restaurant at 8230 Euclid. As a result, business dropped off sharply and at times the restaurant had to be closed. McDonald's representatives recommended to plaintiffs that they release their option on the one Euclid location and sell their other Euclid restaurant to a qualified black buyer. On July 23, 1969, plaintiffs released the option in question. In March 1970, plaintiffs sold the other Euclid restaurant to a black franchisee for $292,000 plus a $15,000 security deposit. Plaintiffs had paid $324,000 for the restaurant in 1967.

In count I of their third amended complaint plaintiffs alleged that, during the summer of 1969, in exchange for the relinquishment of their option on the one restaurant and for the sale of the other, agents of McDonald's orally promised that plaintiffs would be granted two franchises "of comparable location, size, and profit." Plaintiffs further charged that their actions in response were premised on the belief that this commitment would be fulfilled. The complaint recited that this agreement was never put in writing and that plaintiffs have never obtained substitute franchises. Plaintiff sought damages in the sum of $5,000,000.

Count II alleged that as part of the franchise agreement, McDonald's covenanted that it would not grant a franchise to anyone to operate a similar establishment within the exclusive territory granted to plaintiffs. The area was described as "bound * * * on the north by the south side of Miles Avenue; on the west and south by Turney Road; on the east by Warrensville Center Road." Plaintiffs alleged that on December 7, 1976, McDonald's granted a franchise located on the west side of Turney Road

to a third party and that the franchise was within their exclusive territory. Plaintiffs sought damages in the amount of $500,000.

Defendants' answer denied the material allegations of both counts. On May 29, 1978, the trial court granted defendants' motion for summary judgment on both counts of the complaint.

Portions of depositions were made part of the record. Plaintiff, Leonard Minck, testified that in 1969, Edward Bood, an officer and franchise director of McDonald's, suggested that plaintiffs give up the option and sell the other restaurant. Minck was not present on July 23 when two of his partners met with Bood and agreed to give up the option. Minck was informed, however, by one partner, Abraham Grossman, that Bood stated it was not McDonald's policy to put anything in writing concerning a substitute unit, but that if Minck and his partners would cooperate, McDonald's would "take care" of them. Minck stated that in August 1969 during the picketing and boycott, a meeting was held at McDonald's offices in Chicago. Fred Turner, McDonald's president, and other McDonald's personnel were present, as well as Minck, Grossman, and two other partners, Solomon Hoit and Allen Kite. The sale of the restaurant was discussed. Minck and his partners requested that McDonald's make available substitute franchises to them. Minck stated that Turner told them, "If you cooperate and if you play ball with us, we will play ball with you."

Hoit testified at his deposition to a substantially similar response from Turner at that meeting. Seymour Terrell, an attorney, was also at the Chicago meeting. He stated that the subject of substitute units for plaintiffs was discussed. Turner said, in reply to plaintiffs' requests, " 'We'll see to it that nobody loses' or words to that effect." Terrell, because of the violent situation in Cleveland, urged plaintiffs to sell the Euclid restaurant.

Grossman, who performed accounting services for plaintiffs, died during the pendency of this litigation. His time sheets reflect an entry for the August meeting in Chicago. In part, the entry reads: "Turner said if we played ball—he would see that we get another unit to replace 8230."

At deposition Fred Turner stated that because of racial tensions in Cleveland, McDonald's recommended that white owners consider selling to qualified black buyers. As to the Chicago meeting, he recalled that plaintiffs were told McDonald's was not prepared to make a commitment to give them replacement units. Such a promise had been made to certain other franchisees in Cleveland. Turner stated that he did not specifically remember, but that he could have said, "If you play ball with us, we will play ball with you."

Edward Bood testified that although McDonald's recommended that white franchisees sell their units, such a sale could not be compelled by

McDonald's. The purchase price would be negotiated between the owner-operator and a potential buyer. McDonald's approval of a prospective franchisee would be necessary. Bood did not know about any specific commitments being made at the Chicago meeting to provide replacement units for plaintiff.

Plaintiffs maintain that the representations made by McDonald's officials created a triable issue of fact as to whether defendants promised to provide plaintiffs with replacement franchises of "comparable location, size and profit." Plaintiffs contend that consequently the trial court erred in entering summary judgment for defendants.

■■ A motion for summary judgment should be granted only if the record reveals that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57; *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 349 N.E.2d 1.) Resolution of the motion requires the trial court to construe the pleadings, depositions and affidavits strictly against the moving party and liberally in favor of the party opposing the motion. *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 365 N.E.2d 446.

■ Although there is little support in the record for the proposition that there was in fact an oral agreement between the parties, we hold that even if such an agreement existed, the undisputed facts reveal that the subject matter of the agreement falls within the Statute of Frauds. Therefore, absent a writing, the agreement is unenforceable. Section 1 of the Statute of Frauds (Ill. Rev. Stat. 1977, ch. 59, par. 1) provides in pertinent part:

> "[N]o action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith * * *."

The substance of the agreement is that if plaintiffs would give up their option and would sell the other restaurant, McDonald's would provide them with two franchises of comparable size, location and profit. An examination of plaintiffs' franchise agreement reveals that it contemplates a duration of several years and involves continuing obligations on the part of all parties. We do not agree with plaintiffs that the terms of the franchise agreement are irrelevant or that McDonald's agreement to grant them two franchises is separate and apart from the execution of a franchise agreement. The value of a McDonald's franchise agreement lies in the fact that the franchisee, for a specified consideration, is entitled to use the McDonald's name and trademark for a term of years. Without these advantages which are set forth in the agreement, a franchise is

worthless and, indeed, meaningless. We believe the oral contract which forms the basis of count I of plaintiffs' third amended complaint is incapable of being performed within one year and, therefore, is barred by section 1 of the Statute of Frauds.

Parenthetically, the oral contract also falls within the prohibition contained in section 2 of the Statute of Frauds pertaining to contracts for the sale of or an interest in land. The franchise agreement held by plaintiffs on the 8230 Euclid location involved the lease of the property and the restaurant building for a term of years. As in the above discussion relating to section 1, we likewise believe the oral contract to enter into a lease is inseparable from the execution of the lease itself and if the duration of the lease is more than one year, an action on the oral contract is barred by section 2. (See *George J. Cooke Co. v. Kaiser* (1911), 163 Ill. App. 210.) It is significant that in their complaint plaintiffs alleged an oral contract for a franchise of a "comparable location," indicating that they contemplated an arrangement similar to the 8230 Euclid location, *i.e.*, a lease. Consequently, plaintiffs' argument that some franchise agreements do not involve leases since the franchisees own the subject property is irrelevant.

Plaintiffs contend that the circumstances surrounding the making of the oral contract warrant the application of the doctrine of promissory estoppel. Plaintiffs maintain that their actions taken in reliance upon defendants' oral promise in effect validate that promise and prohibit defendants from raising the Statute of Frauds as a bar to plaintiffs' claim. The case law, however, is to the contrary. In *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, *aff'd* (1964), 31 Ill. 2d 507, 202 N.E.2d 516, plaintiff sought damages for breach of an oral employment contract which, on the date it was entered into, could not have been performed within one year. Plaintiff argued that defendant should be estopped from raising the Statute of Frauds because plaintiff had resigned his job in Missouri and had moved to Illinois in reliance upon defendant's oral promise. Rejecting this argument the court stated at page 19:

> "If an oral promise or some other agreement is invalid by reason of the statute, and action is taken on the promise or agreement, the net effect would be to work some moral fraud upon the promisee in every instance. If we infer from this fact that the promise was either fraudulent or a misrepresentation, we have repealed the Statute completely." (45 Ill. 2d 10, 19.)

Similarly here we do not believe the actions taken by plaintiffs in reliance upon defendants' oral promise are sufficient to take the case out of the Statute of Frauds. The authorities cited by plaintiffs in which the doctrine of promissory estoppel was applied in order to enforce an oral promise

are distinguishable in that they do not involve contracts which fall within the Statute of Frauds. See *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.* (1976), 36 Ill. App. 3d 1044, 344 N.E.2d 275; *Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 240 N.E.2d 401.

■■ Furthermore, it is well recognized that the moral wrong of refusing to be bound by an agreement because it does not comply with the statute does not of itself warrant the application of the doctrine of promissory estoppel. "[T]he breach of promise which the law does not regard as binding is not a fraud." (*Ozier v. Haines* (1952), 411 Ill. 160, 163, 103 N.E.2d 485.) The trial court correctly granted summary judgment to defendants as to count I of plaintiffs' complaint.

As to count II plaintiffs maintain there was a triable issue of fact as to whether defendants granted a franchise to a third party to operate a McDonald's restaurant within the exclusive territory granted to plaintiffs.

The record reveals that the franchise granted to a third party was located on the west of Turney Road. The westernmost boundary of the exclusive territory granted to plaintiffs is simply described as Turney Road. Even assuming that by this description the parties intended that plaintiffs' exclusive territory should extend to the western edge of Turney Road, it is undisputed that the franchise in question is located to the west of this boundary. Therefore, the trial court correctly ruled that defendants, in granting a franchise located on the west side of Turney Road, did not thereby infringe upon the exclusive territory granted to plaintiffs. The trial court's grant of summary judgment on count II was proper.

In view of our holding, we need not discuss the claimed error in the trial court's decision to strike plaintiffs' jury demand.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.