JOHN T. HEITZ *et al.*, Plaintiffs-Appellants, v. CIRCLE FOUR REALTY CO., INC., f/k/a Countryside Development Company, Inc., Defendant-Appellee.

Third District   No. 3—89—0018

Opinion filed October 5, 1989.—Rehearing denied January 16, 1990.

Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (Phillip B. Lenzini and James W. Springer, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Frederick G. Hoffman and Frank M. Calvert, both of Thomas & Hinshaw, Culbertson, of Peoria (Kathryn A. Spalding, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

William and Helen Moynan, executors for the estate of John W. Willhardt, filed this action in the circuit court of Tazewell County, seeking *inter alia* a declaratory judgment that a land contract between Willhardt and Circle Four Realty Co., Inc., had terminated. Willhardt's grandchildren, John T. Heitz and Cathy Heitz Schanes, subsequently replaced the Moynans as parties in interest when the Moynans, pursuant to the provisions of Willhardt's will, deeded to Heitz and Schanes the real property at issue. After the circuit court entered judgment for Circle Four, Heitz and Schanes brought this appeal.

The record indicates that on December 9, 1966, Donald Smelz, president of Circle Four, entered into a contract with Willhardt for the development of two tracts of Willhardt's farmland. Under the contract Willhardt was to convey to Circle Four, either directly or through an escrow, deeds to any lots that Circle Four had subdivided. Circle Four was to pay for the lots at the rate of $1,600 per acre. By

its terms the contract was to terminate at the first to occur of either the full payment of purchase price for the tracts of land, the failure of Circle Four to pay for the lots as agreed, or on January 1, 1969, unless at least 10 lots had been "sold and settled for" since January 1, 1968, in which case the contract would be automatically extended annually so long as an average of at least 10 lots per year had been "sold and settled for."

Circle Four proceeded to develop the land, and it sold a sufficient number of lots to keep the contract in force through 1971. Between 1971 and 1975 Circle Four did not subdivide the land, but during each of those years and every year thereafter until 1981, it tendered and Willhardt accepted the sum of $5,000.

In 1975, the Commercial National Bank in Peoria deeded to Circle Four approximately 11 acres of the land which had been placed in its trust by Willhardt in 1969. Circle Four did not pay any money for the deed at the time of or after the transaction.

In March and April of 1976, Helen Moynan, Commercial National Bank's trust officer Robert Cochran and the attorneys for Willhardt and Circle Four corresponded with one another regarding the drafting of an addendum to the 1966 contract to reflect what was actually being done by the parties. The addendum, which was drafted by Willhardt's attorney, provides that if Circle Four fails to sell and settle an average of 10 lots per year as was required for annual extension of the 1966 contract, Willhardt would have the right but not the obligation each year to accept $4,800 in exchange for a deed for three acres, which exchange would annually extend the 1966 contract. Neither Willhardt nor Smelz signed the addendum. Smelz's attorney testified that Smelz refused to sign the addendum because the clause giving Willhardt the right to refuse tender constituted a new term.

Sometime thereafter, Willhardt became aware of the fact that Commercial had transferred the 11 acres to Circle Four. In response, Willhardt revoked the trust and in October 1976 made his neighbor friends, the Moynans, trustees for the land. Neither Willhardt nor the Moynans took any action against Commercial for the transfer of the deed to Circle Four.

On December 30, 1976, Helen Moynan, Willhardt and his attorney, and Smelz and his attorney, Melvin O. Moehle, met to discuss the agreement between Willhardt and Smelz. Moehle's notes of the meeting were admitted into evidence. The notes purport to identify terms of an agreement between Willhardt and Smelz, generally suggesting the annual exchange of $5,000 for 3.07 acres of Willhardt's land. However, no written agreement resulted from the meeting, and nei-

ther party signed Moehle's notes.

In October of 1980 Smelz deeded back to the Moynans in trust for Willhardt the 11 acres which he received from Commercial in 1975 in exchange for a trust deed from the Moynans for 13.6 acres of Willhardt's land. The trustee's deed was signed by both William and Helen Moynan, and their signatures were notarized by Willhardt's attorney, Rudolph J. Westphal. Smelz gave no additional consideration for the receipt of the additional 2.6 acres. The parties agree that the exchange was made because the 13.6 acres were more suitable for development. Circle Four subsequently developed the property received as a result of the 1980 deed.

On February 20, 1981, Willhardt and the Moynans returned a $5,000 check to Smelz, with a letter indicating that they agreed to waive the payment of $5,000 for the years 1980, 1981, and 1982. On November 11, 1983, Willhardt and the Moynans sent a letter to Smelz indicating that they agreed to waive the $5,000 payment for the years 1983 and 1984.

Willhardt died on March 11, 1985. Thereafter, Westphal, the attorney for Willhardt's estate, rejected Circle Four's annual tender of $5,000.

The Moynans, as executors for the estate of Willhardt, then brought this action, seeking a declaration that the 1966 agreement was terminated and seeking return of the 13 acres conveyed in 1980. Circle Four defended, asserting that the plaintiffs were estopped from claiming Circle Four's breach of the contract by virtue of the plaintiff's 15-year course of conduct of accepting or waiving the $5,000 payments. The plaintiffs subsequently raised the defense of the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*).

Following a trial, the circuit court entered judgment for Circle Four, holding that the 1966 contract was modified by the parties' oral agreement to extend the contract by the annual exchange of Circle Four's payment of $5,000 for the conveyance of 10 lots or the acreage equivalent. The court held that the oral contract was evidenced by their mutual performance and conduct, particularly the payment history. The court also held that the contract, as modified, is invulnerable to the Statute of Frauds and remains in force and is enforceable against the plaintiffs. The plaintiffs, Heitz and Schanes, then brought this appeal.

Heitz and Schanes argue first that the circuit court erred in finding that an oral modification of the written agreement had occurred. We disagree. Questions involving the existence of an orally modified contract involving the sale of land, the intent of the parties

and the terms and conditions of the contract involve factual determinations (*Nelson v. Estes* (1987), 154 Ill. App. 3d 937, 941, 507 N.E.2d 530, 532; *Hodgman, Inc. v. Feld* (1983), 113 Ill. App. 3d 423, 428, 447 N.E.2d 450, 455), which will not be disturbed unless clearly contrary to the manifest weight of the evidence. See *Peoria Harbor Marina v. McGlasson* (1982), 105 Ill. App. 3d 723, 727, 434 N.E.2d 786, 790.

▪ In this case the circuit court found that the parties orally modified the written contract to provide that subdivision was no longer a prerequisite to the parties' being able to extend the contract by Circle Four's annual tender of $5,000 in exchange for the transfer of deeds to the acreage equivalent of 10 lots. Its finding is supported by the evidence that from the year 1971 (the first year in which Circle Four ceased to subdivide the land), Circle Four has tendered to Willhardt the amount of $5,000, approximately the same amount needed to purchase the acreage equivalent of 10 lots. Its finding is further supported by the fact that Willhardt took no legal action against either Commercial or the Moynans for conveying trustee's deeds of Willhardt's land to Circle Four. Moreover, there is no evidence that Willhardt had anything to gain from the condition that Circle Four subdivide the land prior to Willhardt's conveyance of deeds. It thus appears that the parties did, in fact, orally modify the 1966 contract to eliminate subdivision as a prerequisite to Circle Four's obtaining the acreage equivalent of 10 lots in exchange for its annual payment of $5,000. While there exists some evidence, namely the testimony of Helen Moynan, to suggest that the $5,000 payment was made merely to keep the contract open, we do not consider such evidence to be of a magnitude sufficient to compel us to conclude that the finding of the circuit court was against the manifest weight of the evidence.

▪ Heitz and Schanes argue, next, that the Statute of Frauds prevents specific performance of the contract as orally modified. We disagree. Ordinarily, contracts for the sale of land and modifications thereof must be in writing to be enforceable. (Ill. Rev. Stat. 1985, ch. 59, par. 2; *Nelson*, 154 Ill. App. 3d at 940, 507 N.E.2d at 532.) However, a court may grant specific performance of an oral contract otherwise unenforceable under the Statute of Frauds where (1) the court has found the terms of the contract to be clear, definite and unequivocal, (2) the contract has been at least partially performed by the party seeking its enforcement, and (3) the acts done in performance are positively attributable exclusively to the contract. *Blaise v. Stein* (1979), 75 Ill. App. 3d 793, 796, 394 N.E.2d 836, 839.

▪ In this case the circuit court found the clear and definite

terms of the contract in the conduct, particularly the payment history, of the parties, and we have already concluded that its finding as to those terms was not against the manifest weight of the evidence. Additionally, Circle Four tendered annual payments of $5,000 to Willhardt, and it took actual possession and made valuable improvements on the land when it developed the land deeded to it by the Moynans in 1980. Such acts are sufficient to constitute part performance. (*Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 538, 153 N.E.2d 37, 43.) Moreover, the circuit court found that such acts were attributable to the contract between Circle Four and Willhardt, and we conclude that such a finding is not against the manifest weight of the evidence. Thus, the circuit court had sufficient basis to grant the award of specific performance.

■ Heitz and Schanes argue that specific performance is, nonetheless, inappropriate because the legal remedy of money damages is available to compensate Circle Four and because the contract provides for future performance. We are persuaded, however, that the subject matter of the contract at issue has an intrinsic value sufficiently unique to render the award of money damages inadequate (*Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 730, 327 N.E.2d 427, 432) and that the terms of the contract are not so detailed that court supervision would be complex. *Forman v. Benson* (1983), 112 Ill. App. 3d 1070, 1078, 446 N.E.2d 535, 541.

Therefore, because the findings of the circuit court as to the existence of the oral modification of the contract were not against the manifest weight of the evidence, and because the circuit court had sufficient basis upon which to award specific performance of the contract, we affirm its judgment.

Affirmed.

WOMBACHER, P.J., and SCOTT, J., concur.