**GENIN, TRUDEAU & CO., LIMITED, Plaintiff,**

v.

**INTEGRA DEVELOPMENT INTERNATIONAL, and Zak Designs, Inc., Defendant.**

**No. 93 C 2463.**

United States District Court, N.D. Illinois, E.D.

Feb. 16, 1994.

Paul F. Donahue, Timothy F. Haley, Carolyn E. Knecht, Seyfarth, Shaw Fairweather & Geraldson, Frederick W. Meyers, Thomas F. Peterson, Ladas & Parry, Thomas G. Gardiner, John L. Hines, Jr., Gardiner, Koch & Hines, Chicago, IL, for plaintiff.

Bernard Wiczer, Fred L. Berkovits, Elliot Scott Wiczer, Wiczer & Associates, Chtd., Northbrook, IL, Marc Nelson Blumenthal, Otto & Blumenthal, Park Ridge, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

This lawsuit involves a license to manufacture and distribute products called "Splashies," which are apparently water-filled vinyl placemats. According to Plaintiff Genin, Trudeau ["Genin"], it entered into an oral contract with Integra, the developer of Splashies, for an exclusive one-year license to manufacture and distribute the products. However, Integra allegedly broke this oral contract by subsequently entering into a written exclusive licensing agreement with Defendant Zak Designs. This matter is before us today for ruling upon the Defendants' motions to dismiss the Amended Complaint. For the reasons stated below, the motions are granted in part and denied in part.

### *Background* [1]

Genin is a Delaware corporation with its principal place of business in New Jersey. It is in the business of licensing, manufacturing, and distributing housewares and gift items, including products similar to Splashies.

Defendant Integra is an Illinois corporation with its principal place of business in Illinois. Integra is in the business of developing, marketing, and distributing Splashies. However, it does not possess the means to

---

**1.** As we must take the well-plead facts of the Amended Complaint as true at this stage, these facts are drawn from the allegations of that document.

manufacture its products. Terry Pantaleo is the President of Integra and Don Perrin is the Vice President.

Defendant Zak Designs is a Washington corporation, but the complaint is silent as to its principal place of business. Like Plaintiff Genin, Zak is in the business of licensing, manufacturing, and distributing certain products.

Prior to December 24, 1992, Integra and Genin began talking about an exclusive license on the Splashies. On December 23, 1992, Integra terminated its license with the prior licensee.

On December 24, 1992, Genin and Integra entered into an oral agreement to give Genin the exclusive right to manufacture and sell all products covered by Integra's patents and trademarks in exchange for an up front payment and a royalty thereafter. The agreement was to last between January 4, 1993 and December 31, 1993, was renewable at the discretion of the parties, and included a post-termination noncompete clause for a period of eighteen months.

The parties exchanged drafts of the agreement, the final draft of which is attached to the Amended Complaint as Exhibit E. However, Integra was involved in litigation with the prior licensee and requested that the parties delay execution of the agreement pending settlement of that lawsuit. Genin and Integra agreed that execution of the draft would be treated only as a formality and to abide by the terms of the agreement. Thus, Genin and Integra began to implement the agreement, and Genin took several steps in reliance upon it. Letters were sent to customers, and Integra suggested that Genin issue a press release.

Apparently, Integra subscribes to Samuel Goldwyn's adage that "a verbal contract isn't worth the paper its written on." When resolution of the lawsuit with the prior licensee appeared imminent, Integra began negotiations with Defendant Zak Designs concerning an exclusive license on the Splashies. On April 3, 1993, Integra settled the lawsuit with the prior licensee, and the suit was dismissed. The next day, Integra and Zak signed an agreement giving Zak an exclusive license to distribute Integra's products. Soon thereafter, Zak began to do so.

Genin, apparently left in the lurch, has filed a five-count Complaint. Counts I, II, and III name Defendant Integra. Count I is for specific performance of the oral licensing agreement. Count II is labeled "Breach of Agreement." Count III claims promissory estoppel. Count IV, against both Defendants, claims Zak's distribution of the Splashies constitutes trademark infringement. Count V, against Integra, seeks a declaration that one of Integra's patents, No. 4,738,888 entitled "Serving Mat," is invalid, apparently filed because Genin continues to manufacture the product under the auspices of the oral licensing agreement, and fears an Integra claim for patent infringement.

### Discussion

■ On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Dawson v. General Motors,* 977 F.2d 369, 372 (7th Cir.1992); *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed with prejudice unless it appears beyond doubt that the plaintiff is unable to prove any set of facts consistent with the complaint which would entitle the plaintiff to relief. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Unless otherwise provided by Rule 9 of the Federal Rules of Civil Procedure, facts need not be pled with particularity. *Leatherman v. Tarrant County Narcotics Intelligence Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 519 (1993). However, we need not credit conclusions of law. *See Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981); *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979). *See also* 5A Charles Wright and Arthur Miller, *Federal Practice and Procedure,* § 1357 at 311–18 (2d ed. 1990). Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

## I. *The Trademark Claim in Count IV*

We begin with the trademark claim in Count IV. Though Genin indicates in a footnote in its Response Brief that it will seek leave to withdraw this claim, Count IV is at present a pending Count so we address its merits herein. Zak makes several interesting arguments in support of its motion to dismiss Count IV, including some discussed in respect to other Counts. However, we need reach only one at this point.

■ Zak argues that because the products it produced for Integra were genuine goods approved by the owner of the mark, there can be no action for trademark infringement. Though the simplicity of Zak's argument is compelling, this issue is far from that easy. Despite its oversimplification of the issue, however, Zak's argument is essentially correct.

■ For obvious reasons, the general rule is that no claim for infringement will lie for the manufacture or distribution of genuine goods. This is especially true where the alleged infringer is an authorized user of the mark.

*Sasson Jeans, Inc. v. Sasson Jeans, L.A.,* 632 F.Supp. 1525 (S.D.N.Y.1986) involved unauthorized sales in the United States of surplus blue jeans manufactured overseas under license. In *Sasson,* the court recognized that the heart of the Lanham Act claim was potential confusion by the consumer as to the origin or source of the goods. 632 F.Supp. at 1527 (citation omitted). The court ruled that there was no trademark infringement because the jeans were "genuine," that is, their production was authorized by contract, they were labeled with the trademark with the intent that they be sold in the United States, and they were sufficiently similar that they could not give rise to the confusion section 1114 of the Lanham Act was intended to prevent. *Sasson,* 632 F.Supp. at 1528–29. *See also Monte Carlo Shirt v. Daewoo Int'l (America) Corp.,* 707 F.2d 1054, 1058 (9th Cir.1983) (surplus shirts were "the genuine product, planned and sponsored by Monte Carlo and produced for it on contract for future sale"); *Ballet Makers v. United States Shoe Corp.,* 633 F.Supp. 1328, 1334–35

(S.D.N.Y.1986) (subsequent licensee's use of trademark does not infringe prior licensee's rights when goods are "genuine" and owner approved both goods for U.S. distribution); *Diamond Supply Co. v. Prudential Paper Prod. Co.,* 589 F.Supp. 470, 475 (S.D.N.Y. 1984) (paper products were produced under contract and "identical or qualitatively equivalent" so no infringement.)

In some limited circumstances, however, the manufacture of apparently genuine, authorized goods may lead to trademark infringement. For example, where a licensee with a limited distribution territory sells genuine, but inferior quality goods outside of its authorized territory, the licensee may be liable for infringement.

In *Original Appalachian Artworks v. Granada Electric,* 816 F.2d 68 (2d Cir.1987), the registrant of the trademark on Cabbage Patch Dolls sued a Spanish licensee who imported dolls into the United States bearing the trademark manufactured under a restrictive license with the owner that did not allow for U.S. sales. The appellate court affirmed a finding of infringement because the dolls were of inferior quality, were materially different from those manufactured for sale in the United States, and were never meant to be sold in the United States. *Original Appalachian,* 816 F.2d at 73. *See also El Greco Leather Prod. Co. v. Shoe World,* 806 F.2d 392 (2d Cir.1986) (reversing finding of no infringement on the ground that while the products had been manufactured by agreement with the trademark owner, they were not "genuine" for purposes of trademark infringement because the shoes were sold without being inspected by the owner to insure quality), *cert. denied sub nom, Shoe World, Inc. v. El Greco Leather Prod. Co.,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987).

Our case most resembles *Sasson, Ballet Makers,* and *Diamond Supply.* As far as we can tell from the pleadings, Zak's products are identical or qualitatively equivalent to those produced by Genin under its alleged oral contract. There are no allegations that Zak's products are anything other than genuine, authorized products. Neither are there allegations of inferior quality or of Zak exceeding the limits of its license with Integra,

two things which might lead to a loss of good will or likelihood of confusion with the products Genin is producing. In these circumstances, it is clear to us that there is no likelihood of confusion or loss of good will. Count IV is dismissed.

## II. *The Contract Issues*

The alleged oral contract, entered into by the parties on December 24, 1992, was to cover a period of January 4, 1993 to December 31, 1993, with an eighteen month non-compete agreement. Integra argues that the statute of frauds bars Genin's claims based upon this agreement.

The Illinois Statute of Fraud provides:

No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized.

740 ILCS 80/1 (West 1993). The alleged oral agreement here could not have been performed within one year of its making. Thus, the question becomes, can the Plaintiff justify taking the agreement out of the statute of frauds? On that question, Plaintiff has two arrows in its quiver, promissory estoppel and partial performance, and we shall address each in turn.

### A. *Promissory Estoppel*

■ In Count III, Genin claims promissory estoppel. Promissory estoppel is an equitable tool that allows the court to infer a contract where none would otherwise exist. *Dickens v. Quincy College Corp.*, 245 Ill. App.3d 1055, 185 Ill.Dec. 822, 826, 615 N.E.2d 381, 385 (1993). The elements of promissory estoppel are: (1) a promise unambiguous in terms; (2) with reliance thereon by the promisee; (3) with such reliance being expected and foreseeable by the promisor; (4) and with the promisee in fact relying on the promise to his injury. *A–Abart Elec. Supply v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir.1992) (citations omitted); *Phil-*

*lips v. Britton*, 162 Ill.App.3d 774, 114 Ill. Dec. 537, 545, 516 N.E.2d 692, 700 (1987). In order to invoke the doctrine, the promisee's reliance must be "reasonable and justifiable." *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir.1991) (citations omitted). It is clear that a plaintiff may recover on a promissory estoppel theory despite the absence of a contract. *Quake Constr. v. American Airlines*, 141 Ill.2d 281, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990).

Were there not a statute of frauds problem, this issue would be much clearer. Unfortunately, the precise question presented, whether the defense of promissory estoppel can take a contract out of the statute of frauds is, at best, an unsettled one in the Illinois courts. *Phillips v. Britton*, 162 Ill. App.3d 774, 114 Ill.Dec. 537, 545, 516 N.E.2d 692, 700 (1987) ("The law in Illinois is unsettled as to whether an action based on promissory estoppel can prevail, where, as here, the action would otherwise fall within the Statute of Frauds.").

Two cases, one from the Illinois Supreme Court, the other from the Seventh Circuit, are the major precedents on this question. We address those cases, and their progeny, respectively.

■ The aging landmark case in Illinois is *Sinclair v. Sullivan Chevrolet Co.*, 31 Ill.2d 507, 202 N.E.2d 516 (1964), where the Illinois Supreme Court found that equitable estoppel, a doctrine similar to promissory estoppel, could not overcome a statute of frauds defense absent proof of misrepresentation by the promisor. *See also Ozier v. Haines*, 411 Ill. 160, 103 N.E.2d 485 (1952). Equitable estoppel is similar to promissory estoppel, which was not recognized in Illinois when *Sinclair* was decided, in all but one element: the gravamen of equitable estoppel is material misrepresentation of past or present circumstances. Promissory estoppel, in contrast, merely requires the allegation of a promise. *R.S. Bennett & Co. v. Economy Mech. Indus.*, 606 F.2d 182, 187 (7th Cir. 1979) (footnote omitted). Thus, under *Sinclair*, the element essential to overcoming a defense based upon the Statute of Frauds,

misrepresentation, is missing from promissory estoppel.

The Illinois Supreme Court revisited the issue tangentially in *Ceres Illinois v. Illinois Scrap Processing,* 114 Ill.2d 133, 102 Ill.Dec. 379, 500 N.E.2d 1 (1986). In *Ceres,* the Court reaffirmed the requirement that the plaintiff must show misrepresentation in order to trump the Statute of Frauds. However, *Ceres* also opened the door to promissory estoppel-type claims ever so slightly by broadening the definition of equitable estoppel. Under *Ceres,* in order to use estoppel to defeat the Statute of Frauds, the plaintiff need not show conduct that is fraudulent in the "legal sense." Rather, the test is "whether in all the circumstances of the case conscience and [the] duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Ceres,* 102 Ill.Dec. at 386, 500 N.E.2d at 7 (citation omitted).

Thus, while *Ceres* has softened *Sinclair* indirectly, it remains unclear whether promissory estoppel can trump the Statute of Frauds. Lower Illinois courts have pronounced conflicting resolutions of this issue. On the one hand, there is a line of cases that categorically deny the applicability of promissory estoppel to a Statute of Frauds defense. For example, in *Dickens,* an employment case, the appellate court unequivocally rejected promissory estoppel as an exception to the statute of frauds: "There is a difference between equitable estoppel, which is an exception to the statute of frauds, and promissory estoppel, which is not. If promissory estoppel were an exception to the statute of frauds, contracts could easily be implied and the statute of frauds easily avoided." 185 Ill.Dec. at 827, 615 N.E.2d at 386. While the arguments against promissory estoppel in the employment context are considerably stronger than in the present case because of the doctrine of employment at will, the language in *Dickens* gives no indication of being limited to that setting.

Similarly, in *Cohn v. Checker Motors Corp.,* 233 Ill.App.3d 839, 175 Ill.Dec. 98, 599 N.E.2d 1112 (1992), a sales case, the Appellate Court read *Ceres* as an outright affirmation of the equitable/promissory estoppel dichotomy. The court distinguished equitable estoppel, which requires misrepresentation, and is an exception to the statute of frauds, from promissory estoppel, which does not require misrepresentation and is not an exception: "However, in an attempt to trump the statute of frauds, a party must invoke the doctrine of equitable estoppel, which differs from promissory estoppel in that the party asserting it must additionally allege words of conduct amounting to misrepresentation or concealment of material facts." 175 Ill.Dec. at 103, 599 N.E.2d at 1117. *See also Fischer v. Mann,* 161 Ill.App.3d 424, 112 Ill.Dec. 903, 908, 514 N.E.2d 566, 571 (1987) (applying *Sinclair* and *Ozier* and requiring misrepresentation to trump statute of frauds).

On the other hand is a string of Illinois cases that take the opposite position. *Leekha v. Wentcher,* 224 Ill.App.3d 342, 166 Ill. Dec. 599, 586 N.E.2d 557 (1991), a case involving an agreement to sell real estate, lends support to the argument that promissory estoppel can trump the statute of frauds. Though the court rejected application of the doctrine because the plaintiffs could not show action in reliance, it implicitly recognized the vitality of a promissory estoppel retort to the statute of frauds. *Leekha,* 166 Ill.Dec. 599, 604–05, 586 N.E.2d 557, 562–63. At least two other recent cases also held that the plaintiff could raise promissory estoppel despite a statute of frauds defense. *See Derby Meadows Util. Co. v. Inter–Continental Real Estate,* 202 Ill.App.3d 345, 147 Ill.Dec. 646, 655, 559 N.E.2d 986, 995 (1990); *Gold v. Dubish,* 193 Ill.App.3d 339, 140 Ill.Dec. 9, 13, 549 N.E.2d 660, 664 (1989).

There is yet a third approach. Some Illinois cases since *Sinclair* have imputed the misrepresentation requirement of equitable estoppel to promissory estoppel as well when the doctrine is used in an attempt to overcome the statute of frauds. *See, e.g., Libby–Broadway Drive–In v. McDonald's Sys.,* 72 Ill.App.3d 806, 28 Ill.Dec. 802, 391 N.E.2d 1 (1979).

Precious little of additional value can be gleaned from federal attempts to apply Illinois law in this area. Noting that the law of estoppel has evolved significantly since the Illinois Supreme Court had addressed the

issue in *Sinclair*, the Seventh Circuit originally predicted, "not without some difficulty, [that] the Illinois Supreme Court would permit the plaintiff to seek recovery on a promissory estoppel theory" in a case governed by article 2 of the commercial code even though the defendant "successfully defends on the basis of the statute of frauds." *R.S. Bennett*, 606 F.2d at 187.

However, that prediction did not materialize, and the Seventh Circuit now routinely questions the validity of the result in *R.S. Bennett. See Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1224–25 (7th Cir.1991) (explaining *R.S. Bennett* ). In *Goldstick v. ICM Realty*, 788 F.2d 456, 464 (7th Cir.1986), the court stated "[w]e hesitate to rely on *Bennett* because there is a question whether it is a correct statement of Illinois law." In fact, the court seemed to retreat almost completely from *Bennett:* "If forced to guess what the Illinois Supreme Court would do in a case like this we would guess (a word used deliberately) that it would hold the statute of frauds applicable to promissory estoppel (since to do otherwise would require the court to overrule two of its decisions), and thus would disapprove *Bennett." Id.*, 788 F.2d at 466. The handful of Circuit Court cases on this issue allow follow the same rhetorical model, and thus provide little help to us. *See A–Abart Elec. Supply v. Emerson Elec. Co.*, 956 F.2d 1399, 1303 (7th Cir.1992) (noting the court's retreat from *R.S. Bennett* ); *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1186 (7th Cir.1991) (summarizing arguments for and against the position taken in *R.S. Bennett* and noting that the question had not been resolved by the Illinois courts); *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1224–25 (7th Cir.1991) (discussing developments in federal and Illinois law in this area); *Evans v. Fluor Distrib. Cos.*, 799 F.2d 364, 368 (7th Cir.1986) (questioning *R.S. Bennett* because "there is arguably some question with respect to whether the Illinois Supreme Court would allow a party to raise the statute of frauds as a defense in an action premised upon promissory estoppel, especially in cases arising under the U.C.C.").

The courts of this district have also reached differing results on this issue. Excluding employment cases, which admittedly have different policy and legal considerations at work, we are left with three cases that cover the spectrum of possible results on this issue.

In *Novacor Chemical v. Aluf Plastics, Inc.*, No. 87 C 9128, 1988 WL 135556 (N.D.Ill. Dec. 8, 1988) (Conlon, J.), Judge Conlon accepted the Seventh Circuit's guess in *Goldstick* that the Illinois Supreme Court would find the statute of fraud applicable to a promissory estoppel claim as the law. Thus, she held that the statute of frauds trumps promissory estoppel. *Id.*, 1988 WL 135556, at * 4.

Taking a more analytical approach, Judge Grady focused upon the distinction between UCC cases and non-UCC cases in *Snellman v. A.B. Dick*, No. 81 C 3048, 1987 WL 8619 (N.D.Ill. March 24, 1987) (Grady, C.J.). Relying on speculation based upon the statute of frauds in the commercial code in *R.S. Bennett, Evans,* and *Goldstick,* Judge Grady held that the statute of frauds can defeat a promissory estoppel claim only in a non-U.C.C. case. *Id.*, 1987 WL 8619, at * 11.

Finally, in *Michaels Corporation v. Trans World Metals*, No. 87 C 3440, 1987 WL 14010 (N.D.Ill. July 14, 1987), Judge Getzendanner recognized the uncertainty in this area but was able to resolve the question presented without venturing a guess as to the future of Illinois law. Focusing on the Illinois Supreme Court's loosening of the definition of equitable estoppel in *Ceres*, Judge Getzendanner found that the allegations or promissory estoppel in *Michaels* fell within those boundaries, *id.*, 1987 WL 14010, at * 2, and were thus sufficient to defeat a statute of frauds defense.

As we noted above, under a theory of equitable estoppel, fraud of misrepresentation is required to defeat a statute of frauds defense. However, under *Ceres,* the plaintiff need not show conduct that is fraudulent in the "legal sense" to state a claim for equitable estoppel. Rather, the test is "whether in all the circumstances of the case conscience and [the] duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Ceres,*

102 Ill.Dec. at 385, 500 N.E.2d at 7 (citation omitted).

As in *Michaels*, we believe the allegations here are more than sufficient to fall within the *Ceres* definition of equitable estoppel. Genin alleges that it reach oral agreement with Integra for an exclusive license, but that executing the final draft of the contract was delayed at Integra's request while Integra tried to resolve litigation with a former licensee. On January 7, 1992, Integra's Pantaleo wrote to Genin, saying that Integra would like to delay signing the contract because of those concerns, but making it plain that "[o]ur intention is to move forward with [Genin]." (Am.Compl. ¶ 13(a) & Ex. A.) Integra told Genin to fill orders from Disney immediately, (Am.Compl. ¶ 13(a)), announced to buyers that Genin was its new representative, (Am.Compl. ¶ 13(b)), and asked Genin to incorporate certain information on the product labels. (Am.Compl. ¶ 13(d)). Further, in a letter dated January 5, 1992 Integra recommended that Genin issue a press release concerning the license, (Am.Compl. ¶ 13(c)), which said: "I think your best 'release' should simply acknowledge that you are now 'the newly assigned exclusive distributor of the original Splashies....'" (Am.Compl. Ex. C).[2] Apparently, as this was going on, Integra was negotiating with Defendant Zak Designs for the very same license on the Splashies.

Given our consideration of "all the circumstances of the case," as alleged, *Ceres*, 102 Ill.Dec. at 385, 500 N.E.2d at 7, it is clear that "conscience and [the] duty of honest dealing," *id.*, should deny Integra the right to repudiate the consequences of the its representations. *Ceres*, 102 Ill.Dec. at 385, 500 N.E.2d at 7. The Amended Complaint sufficiently states allegations that fall with the *Ceres* definition of estoppel, and the motion to dismiss Count III is denied.

### B. *Partial Performance*

■ Count I of the Amended Complaint seeks specific performance of the agreement and Count II seeks damages for "breach of agreement." While the Defendants have moved to dismiss these Counts under the Statute of Frauds, Genin argues that the doctrine of partial performance voids the statute here.

■ As a general rule in Illinois, the Statute of Frauds will not bar the enforcement of a contract where there has been sufficient partial performance of a contract in reliance upon the other party's promises or conduct and where it is impossible to restore the parties to the status quo. *Dresser Indus. v. Pyrrhus*, 936 F.2d 921, 929 (7th Cir.1991) (citations omitted); *Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1440 (7th Cir.1983); *Cohn v. Checker Mtrs.*, 233 Ill.App.3d 839, 175 Ill.Dec. 98, 102–03, 599 N.E.2d 1112, 1116–17 (1992) (citations omitted); *Dickens*, 185 Ill.Dec. 822, 826, 615 N.E.2d 381, 385. (citations omitted). For specific performance of an oral contract that would normally be unenforceable under the Statute of Frauds, the court must find clear and unambiguous terms, partial performance by the party seeking to enforce the contract, and that the acts alleged as partial performance were attributable exclusively to the contract. *Leekha*, 166 Ill.Dec. 599, 604, 586 N.E.2d 557, 562 (citations omitted).

■ However, ' "[o]nly where the parties do not have equal knowledge, or access thereto, or where there are other peculiar circumstances inducing the injured party to rely solely on the representation of the other will a person be found to have justifiably relied upon the other's representations." ' *Dresser*, 936 F.2d at 929 (quoting *Runnemede Owners v. Crest Mortgage Corp.*, 861 F.2d 1053, 1058 (7th Cir.1988) (quoting *Luciani v. Bestor*, 106 Ill.App.3d 878, 62 Ill.Dec. 501, 506, 436 N.E.2d 251, 256 (1982))). Further, mere acts of preparation to perform are not partial performance of a contract. *Leekha*, 166 Ill.Dec. at 605, 586 N.E.2d at 563.

Several questions arise here. At this stage of the proceeding, we cannot possibly address whether "peculiar circumstances' " *Dresser*, *id.*, justified Genin's reliance on In-

---

2. As these documents are referred to in the Amended Complaint and are central to the claims therein, we may refer to it within the bounds of a motion to dismiss.

tegra's assurances.[3] Further, it is not clear that money damages cannot return Genin to the status quo. If that is the case, a claim for specific performance on a partial performance theory is inappropriate. *Dickens,* 185 Ill.Dec. at 826, 615 N.E.2d at 385 (quoting *Culbertson v. Carruthers,* 66 Ill.App.3d 47, 22 Ill.Dec. 810, 815, 383 N.E.2d 618, 623 (1978)).

Finally, and perhaps most importantly, it is unclear whether Genin's acts in reliance were actually partial performance of the contract or merely preparatory acts. A review of the allegations of the Amended Complaint indicates that Genin merely undertook preparation to perform but did not begin to perform. Paragraph 27 alleges, *inter alia,* the following acts of partial performance undertaken by the Plaintiff:

a. solicited and accepted orders for the Products

b. incurred expenses for "arranging to included displays of the Products" at trade shows

c. made advance purchases of stock "in anticipation of filling future orders"

d. procured insurance naming Integra

e. inspected facilities of Integra's recommended manufacturer

f. prepared revised catalogue

g. produced product labels

h. ordered special custom sample cases that "were to be used by" Genin sales representatives

(Am.Compl. ¶ 27.)

To our eyes, these acts are clearly preparatory. None involve the distribution, manufacture, or sale of Splashies, which are the essence of the oral agreement as embodied by the draft attached to Amended Complaint. As the Illinois Appellate Court noted in *Leekha,* "[c]ourts which have granted specific performance based on a party's partial performance have required far more significant action on the part of the party seeking to enforce an oral contract outside the Statute of Frauds than the present plaintiffs even allege." 166 Ill.Dec. at 604, 586 N.E.2d at

562. For example, a binding contract has been found where the buyer of real estate has paid full consideration and taken possession of the property, *Leekha, id.* (citing *Thomas v. Moore,* 55 Ill.App.3d 907, 12 Ill. Dec. 898, 370 N.E.2d 809 (1977)), has made several payments on the property, taken possession and made improvements, *Leekha,* 166 Ill.Dec. at 604–05, 586 N.E.2d at 562–63 (citing *Pendleton v. King,* 55 Ill.App.3d 1, 12 Ill.Dec. 786, 370 N.E.2d 590 (1977) and *Heitz v. Circle Four Realty Co.,* 191 Ill.App.3d 727, 138 Ill.Dec. 781, 548 N.E.2d 11 (1989)), or has fully performed the agreement. *Leekha,* 166 Ill.Dec. at 605, 586 N.E.2d at 563 (citing *Lund v. E.D. Etnyre & Co.,* 103 Ill.App.2d 158, 242 N.E.2d 611 (1968)). However, engaging an architect to prepare building plans is preparation, *Leekha,* 166 Ill.Dec. at 606, 586 N.E.2d at 564, as is selling the buyer's residence and signing contracts to move and to furnish the seller's home. *Intini v. Marino,* 112 Ill.App.3d 252, 68 Ill.Dec. 12, 16, 445 N.E.2d 460, 464 (1983).

Though these cases involved oral contracts for the sale of real estate and thus a different portion of the Statute of Frauds, the principles apply by analogy to the present case. Here, Genin has alleged substantial acts of preparation. However, acts of preparation, no matter how extensive, are insufficient to support a claim for partial performance. Thus, Counts I and II, for specific performance and breach of agreement, are barred by the Statute of Frauds, and are dismissed without prejudice. If Genin can amend its claims to allege actual part performance consistent with the requirements of the law, it may do so.

### Conclusion

Defendant Zak's motion to dismiss is granted and Count IV is dismissed. Defendant Integra's motion to dismiss is granted in part and denied in part. Integra's motion to dismiss Count III is denied. However, Integra's motion to dismiss Counts I and II is granted, and those counts are dismissed

---

**3.** Certainly, the then-pending lawsuit between Integra and a former licensee raises interesting possibilities on this issue.

without prejudice. If desired, Integra may file an amended complaint within thirty days.