586 N.E.2d 557 (1991)
224 Ill. App.3d 324
166 Ill.Dec. 599
Rajendra K. LEEKHA and Saroj Leekha, Plaintiffs-Appellants,
v.
Ernest C. WENTCHER, Ernest C. Wentcher and Associates, Inc., Lake Shore National Bank, as Trustee under Trust Number 1-6064, Harry Yourell, Cook County Registrar of Titles, Shannon Associates, Ltd. and Heatherfields Community Association, Inc., Defendants-Appellees.
No. 1-90-2106.
Appellate Court of Illinois, First District, Third Division.
December 27, 1991.
*558 Carponelli & Krug, Chicago (Stephen P. Carponelli, Michael J. Weik, James V. Noonan, of counsel), for plaintiffs-appellants.
Ancel, Glink, Diamond & Cope, P.C., Chicago (Ronald S. Cope, Michael W. Tootooian, of counsel), for defendants-appellees.
Justice GREIMAN delivered the opinion of the court:
Plaintiffs Rajendra and Saroj Leekha appeal from the circuit court's dismissal of their complaint which alleged the existence of an enforceable real estate sales agreement allowing them to purchase a parcel of land in a new subdivision.
We affirm the decision of the circuit court.
Plaintiffs sought to purchase a vacant lot in a real estate development called the Heatherfields of Burr Ridge from defendant sellers, Ernest Wentcher and Wentcher & Associates. The other named defendants are not involved in this appeal.
The sequence of events upon which plaintiffs' cause of action is predicated began on February 14, 1987, when plaintiffs first visited the sales office for the Heatherfields and later executed a document entitled "Property Reservation Receipt" (Reservation Receipt) on February 23, 1987. The Reservation Receipt acknowledged plaintiffs' payment of $8,400 as an initial deposit on the total purchase price of $84,000. The Reservation Receipt further states in part as follows:
"The initial deposit received herein shall reserve in the name of the Purchaser, the above described lot [lot 42] until the 31st day of May, 1987 or until such time as the parties hereto enter into a Contract of Purchase and Sale, whichever date first occurs. * * *
In the event the Seller and Purchaser cannot come to a mutual agreement on *559 the terms and conditions of a Contract of Purchase and Sale by May 31, 1987, this Reservation Agreement shall be terminated and the money deposited with Seller shall be refunded to Purchaser. * * *
The purpose of this agreement is to reserve the lot provided for herein solely, and shall not control nor have any effect whatsoever on the Sale and Purchase Agreement which the parties hereto may enter into. Purchaser shall not have any interest in the lot whatsoever unless a contract is subsequently entered into between the parties."
The Reservation Receipt was signed by plaintiffs and defendant Ernest Wentcher.
On May 31, 1987, Shannon & Associates, Ltd. (Shannon), the real estate broker, sent plaintiffs a copy of a real estate sale contract which specified a closing date of July 10, 1987. This version of the contract was never signed by anyone.
Plaintiffs' complaint also contains a price list for the lots in The Heatherfields of Burr Ridge. The price list designates lot # 42 as "sold" and includes the notice that prices are subject to change without notice. Plaintiffs allege that they received this price list on July 6, 1987.
Additionally the record discloses two letters which discuss the relocation of a planned bike path away from lot # 42. A letter dated August 28, 1987, was sent by Patricia Shannon as a representative of the Heatherfields Community Association to the Village Manager of Burr Ridge. In this letter Ms. Shannon proposed re-routing a planned bike path away from lot # 42. Another letter dated September 18, 1987, was sent from plaintiffs to the Village Manager of Burr Ridge specifically supporting the proposal made by Ms. Shannon in her August 28 letter. In a blind note to Ms. Shannon, plaintiffs wrote "I thank you for your efforts to resolve this issue."
A check dated October 14, 1987, for $8,400 was issued by plaintiffs to defendants. Defendants never endorsed this second check and returned it to plaintiffs.
A form real estate sale contract dated November 24, 1987, was tendered by plaintiffs to defendants. This version of the contract is substantially similar to the prior version of May 31, 1987, except for an additional paragraph in the rider which is as follows:
"Purchaser and Seller agree that this contract is contingent upon Seller's ability to procure a perpetual easement from the owner of the adjacent property for purposes of constructing and maintaining a bike path on said property."
This November 1987 version of the contract imposing an additional condition was signed by plaintiffs only.
By letter dated January 11, 1988, Shannon notified plaintiffs that defendants refused to accept plaintiffs' proposed contract. Shannon returned plaintiffs' offer to purchase and checks totaling $16,800.
By letter dated February 18, 1988, defendants informed plaintiffs that since they were not able to reach mutually acceptable terms for a contract, defendants were free to sell the lot to another party. In this letter defendants stated:
"You [plaintiffs] asked me not to sell Lot 42 to anyone else until you returned from London and met with me. The meeting took place today and the issue remains the same. The original contract [November 1987] that you sent to us with a contingency, as you know, was returned unsigned by me as unacceptable.
We offered to sell the lot to you for $90,000 on our standard contract which you refused. We now consider ourselves free to sell the lot to third parties."
Checks totaling $16,800 were returned to plaintiffs.
Subsequently plaintiffs filed a complaint for specific performance and monetary damages for alleged violations of the Consumer Fraud and Deceptive Business Practices Act (Ill.Rev.Stat.1987, ch. 121½, par. 261 et seq.).
In Count I of their complaint, plaintiffs allege that they are entitled to specific performance because the documents in the record, when taken as a whole, are sufficient evidence of an agreement in writing under the Statute of Frauds or that the *560 acts of plaintiffs constitute partial performance of an oral contract and is enforceable as an exception to the Statute of Frauds.
In Count II plaintiffs claim that they incurred a substantial change of position and thus the promissory estoppel doctrine applies which would entitle them to specific performance.
In Count III plaintiffs assert that they are entitled to monetary damages under the Consumer Fraud and Deceptive Business Practices Act. Ill.Rev.Stat.1987, ch. 121½, par. 261 et seq.
The trial court granted defendants' motion to dismiss counts I and II under section 2-619(a)(7) which allows involuntary dismissal where the claim asserted is unenforceable under the provisions of the Statute of Frauds (Ill.Rev.Stat.1987, ch. 110, par. 2-619(a)(7)) and motion to dismiss count III under section 2-615 which allows a motion for judgment on the pleadings where the plaintiff has failed to state a cause of action (Ill.Rev.Stat.1987, ch. 110, par. 2-615). Plaintiffs now appeal from these orders of the trial court dismissing their complaint.
First we must address defendants' assertion that counts I and II should be dismissed on grounds of mootness since the property has been sold to a third party. Defendants argue that plaintiffs failed to perfect a stay according to Supreme Court Rule 305(b)(3) and (i) (134 Ill.2d R. 305). We have previously twice denied defendants' motion to dismiss on these grounds and decline to reconsider our decision.
On appeal, plaintiffs first contend that the various documents, when considered together, evidence an agreement in writing sufficient to satisfy the Statute of Frauds. We disagree.
The Statute of Frauds provides as follows:
"Land-Writing-Signature-Exceptions
2. No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged there with, or some other person thereunto by him lawfully authorized in writing, signed by such party. * * *" Ill. Rev.Stat.1987, ch. 59, par. 2.
In Prodromos v. Poulos (1990), 202 Ill. App.3d 1024, 148 Ill.Dec. 345, 560 N.E.2d 942, this court enunciated the following test: "Under the Statute of Frauds, a person cannot enforce a real estate contract unless: (1) there is a written memorandum or note on one or more documents; (2) the documents collectively contain a description of the property and the terms of sale, including price and manner of payment; and (3) the memorandum or note contains the signature of the party to be charged." (Prodromos, 202 Ill.App.3d at 1028, 148 Ill.Dec. 345, 560 N.E.2d 942.) Moreover, the court in Prodromos held that "[i]n a contract for the sale of land, an agent may sign the contract only if the authority to do so is in writing." Prodromos, 202 Ill. App.3d at 1029, 148 Ill.Dec. 345, 560 N.E.2d 942.
In granting defendants' motions to dismiss plaintiffs' complaint, the trial court found Flannery v. Marathon Oil Company (1979), 75 Ill.App.3d 690, 31 Ill.Dec. 504, 394 N.E.2d 706, analogous to the present case. The Flannery plaintiff, like the present plaintiffs, brought an action for specific performance to require the purchase of a parcel of real estate. In Flannery, the defendant's real estate representative sent the plaintiff a letter enclosing a written offer to purchase a parcel of real estate. In turn, the plaintiff signed this offer and mailed it back to defendant's real estate representative with a $5,000 check as a down payment. In a subsequent letter stating that the defendant had rejected the plaintiff's proposal, the defendant's real estate representative returned to the plaintiff the signed offer to purchase and the $5,000 check. In affirming the dismissal of the plaintiff's complaint, the Flannery court found that the alleged contract was not enforceable because the defendant seller never signed the real estate offer made by the plaintiff purchaser. The court reasoned *561 that "the crucial point here is that the written offer to purchase was never signed by defendant as the party to be charged or by any person lawfully authorized by the defendant. It follows that the contract here involved comes squarely within the prohibition of the statute of frauds * * *." Flannery, 75 Ill.App.3d 690, 31 Ill.Dec. at 507, 394 N.E.2d at 709.
Similarly, in the present case, a real estate broker, Shannon, sent a contract to plaintiffs on May 31, 1987, after plaintiffs had issued a $8,400 check as an initial deposit. The May version of the contract was never signed by any party. In October of 1987, plaintiffs executed another check for $8,400, but this check was never endorsed by defendants. The November 24, 1987, version of the contract which contained the contingency regarding the bike path was tendered by plaintiffs but was signed only by plaintiffs, not defendants. In January, 1988, Shannon returned to plaintiffs their November version of the contract, unsigned by defendants, and checks in the amount of $16,800. On February 18, 1988, defendants wrote a letter to plaintiffs stating that plaintiffs' November contract was unacceptable and plaintiffs had refused defendant's subsequent offer to sell the lot to them. Defendants again returned checks totaling $16,800 to plaintiffs.
With the exception of defendants' February 1988 letter notifying plaintiffs that no mutually acceptable terms had been reached, the only document signed by defendants, i.e., the party to be charged, is the Reservation Receipt which specifically provided that plaintiffs as the purchasers would not have any interest in the lot "unless a contract is subsequently entered into between the parties." Plaintiffs also signed the Reservation Receipt. The language of this Reservation Receipt clearly evinces an intent not to be bound until the execution of a subsequent real estate contract. Where the intent of the parties is that neither will be legally bound until the execution and delivery of a formal agreement, then no contract comes into existence until such execution and delivery. Intini v. Marino (1983), 112 Ill.App.3d 252, 254, 68 Ill.Dec. 12, 445 N.E.2d 460; Brunette v. Vulcan Materials Co. (1970), 119 Ill. App.2d 390, 395, 256 N.E.2d 44 ("where the formal execution of an agreement is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon").
Plaintiffs primarily rely on Barton Chemical Corporation v. Pennwalt Corporation (1979), 79 Ill.App.3d 829, 35 Ill. Dec. 454, 399 N.E.2d 288, as the case most directly on point. The court in Barton held that a 1974 letter from the defendant seller's regional manager to the plaintiff purchaser's president satisfied the statute of frauds and thus was a binding contract. This letter confirmed certain contract modifications which the parties had negotiated three days earlier. The parties in Barton had negotiated a series of two-year requirements contracts since 1970. The 1974 letter at issue specifically confirmed the negotiations for the 1974-75 contract and stated that "[a]ll other terms and conditions of our current contract remains unchanged." In addition, the letter stated that an extension through the end of 1976 would be forwarded to the plaintiff purchaser. The written contract anticipated by the 1974 letter was never executed. In 1976 the defendant seller refused to sell its product to the plaintiff purchaser upon the terms established in the 1974 letter.
In finding that a binding contract existed, the Barton court reasoned that the 1974 letter clearly set forth the new price and quantity increases, was comprehensive in nature, and expressly indicated that the modified 1974-75 contract was to be extended through 1976. Moreover, the defendant sellers, who were challenging the validity of the agreement, had already reaped the benefits of the 1974 terms, i.e., increases in both the price paid by the plaintiff purchaser and the quantity sold to them.
We find the Barton case inapposite. Unlike Barton, the parties in the present case had no prior dealings and there is no document signed by the party to be charged which contains the specificity or clarity of *562 the letter relied on in Barton. Moreover, unlike this case, the Barton parties bought and sold products for nearly two years before challenging the validity of a contract. The present defendants, however, reaped no benefit from any alleged agreement with plaintiffs. Defendants held lot 42 aside for plaintiffs at their request until February 1988 even though no mutual agreement had been reached and thereafter returned all of plaintiffs' money.
A distinction must be drawn between preliminary negotiations toward an agreement and the actual existence of a final contract. Fox v. Lawson (1979), 76 Ill. App.3d 806, 811, 32 Ill.Dec. 358, 395 N.E.2d 588.
In determining a motion to dismiss under section 2-619, the court must consider whether or not the defendant alleged facts which constitute an affirmative defense that could defeat the plaintiff's cause of action. (Prodromos, 202 Ill.App.3d at 1028, 148 Ill.Dec. 345, 560 N.E.2d 942.) In light of all the documents in the record, we find that the trial court did not err in granting defendants' motion to dismiss on the grounds that in light of the Statute of Frauds, no enforceable contract existed.
Plaintiffs next contend that a valid oral contract exists based on their partial performance of the agreement. We disagree.
An oral contract to transfer real estate is generally unenforceable under the Statute of Frauds. (Alguire v. Walker (1987), 154 Ill.App.3d 438, 107 Ill.Dec. 279, 506 N.E.2d 1334.) However, part performance is an equitable doctrine that can remove an oral contract to convey land from the operation of the Statute of Frauds. Phillips v. Britton (1987), 162 Ill.App.3d 774, 114 Ill.Dec. 537, 516 N.E.2d 692.
The test for specific performance of an oral contract is as follows:
"Before a court may exercise that discretion in favor of granting the remedy in the case of an oral contract which would normally be unenforceable under the Statute of Frauds, the court must find that the terms of the contract are clear, definite, and unequivocal [citations], that the contract has been at least partially performed by the party seeking the remedy [citations] and that the acts allegedly done in performance are positively attributable exclusively to the contract [citations]." Intini v. Marino (1983), 112 Ill.App.3d 252, 256, 68 Ill.Dec. 12, 445 N.E.2d 460, quoting Blaise v. Stein (1979), 75 Ill.App.3d 793, 796, 31 Ill.Dec. 634, 394 N.E.2d 836.
Plaintiffs claim that they partially performed the agreement because they engaged an architect to prepare building plans, effected the communications with the village concerning the bike path, signed a form real estate contract and made payment of two separate earnest money checks. We find that these actions do not constitute sufficient performance to take the alleged oral contract out of the Statute of Frauds.
First, the hiring of an architect to design a home was not a requirement under the terms of the alleged agreement and thus it cannot be attributable exclusively to the contract. Second, the re-routing of the bike path was the result of negotiations between the developers and the village, not plaintiffs. Third, the November 1987 contract which was signed by plaintiffs was never signed or agreed to by defendants. Fourth, defendants returned plaintiffs' two checks totaling $16,800, one of the checks having never been cashed.
Courts which have granted specific performance based on a party's partial performance have required far more significant action on the part of the party seeking to enforce an oral contract outside the Statute of Frauds than the present plaintiffs even allege. A binding contract has been found where the purchaser had paid full consideration for the property and also took possession (Thomas v. Moore (1977), 55 Ill.App.3d 907, 12 Ill.Dec. 898, 370 N.E.2d 809; Anastaplo v. Radford (1958), 14 Ill.2d 526, 153 N.E.2d 37; David v. Schiltz (1953), 415 Ill. 545, 114 N.E.2d 691); where the purchaser made a down payment and five monthly payments towards the purchase price, took possession of the property, *563 and made improvements to the property (Pendleton v. King (1977), 55 Ill. App.3d 1, 12 Ill.Dec. 786, 370 N.E.2d 590; see also, Heitz v. Circle Four Realty Co. (1989), 191 Ill.App.3d 727, 138 Ill.Dec. 781, 548 N.E.2d 11); and where the party seeking relief has fully performed the agreement (Lund v. E.D. Etnyre & Co. (1968), 103 Ill.App.2d 158, 242 N.E.2d 611).
Actions taken by a party in anticipation of a contract are not sufficient to warrant the application of the doctrine of part performance. The court in Intini rejected the purchasers' allegations of part performance where they sold their current residence, retained professional movers, and contracted for furniture for their new home before the real estate contract had been resolved. (Intini, 112 Ill.App.3d 252, 68 Ill.Dec. 12, 445 N.E.2d 460.) The Intini court reasoned that "[w]hile arguably contingent upon a successful resolution of a real estate sales contract between the parties, none of these actions were required by the actual offer to purchase the real estate itself." Intini, 112 Ill.App.3d at 256, 68 Ill.Dec. 12, 445 N.E.2d 460.
We find that plaintiffs have failed to establish any performance sufficient to take the alleged oral contract out of the Statute of Frauds.
Plaintiffs next assert that they incurred a substantial change of position and thus the trial court erred in dismissing Count II which sought specific performance based on promissory estoppel. Again we find no error.
The Illinois Supreme Court has held that "[t]o establish a claim based on promissory estoppel, plaintiff must allege and prove that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. [citations] Plaintiff's reliance must be reasonable and justifiable. [citations] Plaintiff may recover on a theory of promissory estoppel despite the absence of a contract." Quake Construction, Inc. v. American Airlines, Inc. (1990), 141 Ill.2d 281, 309-10, 152 Ill.Dec. 308, 565 N.E.2d 990.
Plaintiffs allege that they have incurred a substantial change of position because they expended money ($16,800), time and effort to close the transaction.
The question of change in position and the corresponding invocation of the doctrine of estoppel must be decided by the court on the basis of the totality of the circumstances. Foster & Kleiser v. Chicago (1986), 146 Ill.App.3d 928, 100 Ill.Dec. 481, 497 N.E.2d 459; Leisuretime Recreation Center VI, Inc. v. Byrne (1981), 93 Ill.App.3d 489, 48 Ill.Dec. 926, 417 N.E.2d 658.
A cause of action based on promissory estoppel was allowed where the plaintiffs were prospective purchasers of a grocery business being sold by the defendant sellers because the plaintiffs had quit their previous jobs and lost substantial amounts of income and benefits in reliance on the defendants' clear promises. (Gold v. Dubish (1989), 193 Ill.App.3d 339, 140 Ill.Dec. 9, 549 N.E.2d 660.) In contrast, the present plaintiffs took no such significant actions so as to invoke the promissory estoppel doctrine. As previously noted, defendants returned the full $16,800 to plaintiffs. Moreover, defendants' "promises" were clearly conditional in nature. Ten months after the execution of the Reservation Receipt plaintiffs were making counter offers with new conditions.
Accordingly, we find that the trial court's dismissal of Count II was proper because plaintiffs' acts were not sufficient to support a claim under a promissory estoppel theory.
Lastly, plaintiffs contend that the trial court erred in dismissing Count III based on the Consumer Fraud and Deceptive Practices Act (Act).
In their complaint plaintiffs allege that defendants violated section 2 of the Act which provides that:
"unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation *564 or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * are hereby declared unlawful." Ill.Rev.Stat.1987, ch. 121½, par. 262.
Plaintiffs base their statutory claim on the following allegedly deceptive actions: (1) defendants executed the Property Reservation Receipt; (2) defendants accepted two checks from plaintiffs; (3) defendants induced plaintiffs to hire an architect and to execute various documents, such as the real estate contract; and (4) defendants misrepresented their intention to sell the property at the price stated in the Property Reservation Receipt ($84,000).
In ruling on a motion to dismiss, all well-pleaded facts must be taken as true and all inferences therefrom must be drawn in favor of the nonmovant. (Stefani v. Baird & Warner, Inc. (1987), 157 Ill. App.3d 167, 109 Ill.Dec. 444, 510 N.E.2d 65.) However, a trial court is not required to reach unreasonable and unwarranted conclusions or to draw unreasonable and unwarranted inferences in order to sustain the sufficiency of a complaint (Carlson v. Moline Board of Education (1984), 124 Ill.App.3d 967, 80 Ill.Dec. 256, 464 N.E.2d 1239) and a defendant is not required to go to trial on a complaint that does not allege facts sufficient to support a cause of action (Harvey v. Mackay (1982), 109 Ill.App.3d 582, 65 Ill.Dec. 167, 440 N.E.2d 1022).
Based on our examination of the record and application of the standards for ruling on a motion to dismiss, we find that the dismissal of plaintiffs' statutory count was proper. As we have previously found, neither a written nor an oral contract existed. The facts, construed most favorably in plaintiffs' favor, nevertheless reveal that the parties were still in the negotiating phase of the transaction and that various contingencies were discussed and considered. The Act is not intended to be used as a vehicle for transforming nondeceptive and nonfraudulent statements into actionable ones. (IK Corporation v. One Financial Place Partnership (1990), 200 Ill. App.3d 802, 817, 146 Ill.Dec. 198, 558 N.E.2d 161; Kellerman v. Mar-Rue Realty and Builders, Inc. (1985), 132 Ill.App.3d 300, 306, 87 Ill.Dec. 267, 476 N.E.2d 1259.) Since none of the acts or practices of defendants fall within the statutory definition of the Act, we find that plaintiffs' complaint failed to constitute a sufficient basis for a cause of action under the Act.
Judgment affirmed.
CERDA, P.J., and TULLY, J., concur.