**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240585-U

Order filed August 12, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| KATHRYN STALLARD and BARBARA ARONSON, derivatively and on behalf of the Family Trust created under the Restatement of the Lewis Leonard Stallard Declaration of Trust Created May 24, 1986, | ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Petitioners-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0585 Circuit No. 23-CH-232 |
| U.S. BANK NATIONAL ASSOCIATION, d/b/a U.S. Bank Private Wealth Management, as Trustee for the Restatement of the Lewis Leonard Stallard Declaration of Trust Created May 24, 1986, | ) ) ) ) ) ) | Honorable Bryan S. Chapman, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The trial court did not err in dismissing petitioners' second amended petition for accounting and breach of fiduciary duty. Affirmed.

¶ 2 Petitioners, Kathryn Stallard and Barbara Aronson, derivatively and on behalf of the family trust, appeal the trial court's dismissal of their two-count petition for accounting and breach of fiduciary duty against the respondent trustee of the family and marital trusts, U.S. Bank. For the reasons set forth below, we affirm.

¶ 3 I. BACKGROUND

¶ 4 The following facts are derived from the pleadings. Lewis and Betty Stallard were married in 1978, at which time Lewis had three adult children from a prior relationship (including Kathryn Stallard and Barbara Aronson), and Betty had four adult children from a prior relationship.

¶ 5 On January 27, 1993, Lewis executed the Restatement of the Lewis Leonard Stallard Declaration of Trust Created May 24, 1986 (restatement). According to the restatement, upon Lewis's death and in the event Betty survived him, two sub-trusts were to be created: a family trust and a marital trust.

¶ 6 The family trust was to be administered as follows. First, 20% of the family trust was to be immediately distributed to Lewis's children. Second, 20% of the family trust was to be held in trust for five years, during which time Betty was to receive the income therefrom, and after which the remaining principal was to be distributed to Lewis's children. Third, the remaining 60% of the family trust was to be held with the income therefrom paid to Betty and the principal being available to her for her reasonable support and health only after the principal of the marital trust was exhausted. The family trust was to terminate upon Betty's death, with the principal and accrued or undistributed net income thereof to be equally divided amongst Lewis's children.

¶ 7 From the marital trust, the trustee was to pay Betty "all the net income" and "as much principal thereof" as requested by Betty in writing. Upon Betty's death, if occurring at least three

months after Lewis's death, the remaining principal and accrued or undistributed income not effectively appointed by Betty's will was to be added to the family trust.

¶ 8    Lewis died on January 5, 1994. The family trust was funded with $600,000, and the marital trust was funded with $93,734. Following Lewis's death, U.S. Bank (f/k/a Firstar Trust Company of Illinois), served as the successor trustee of both the family trust and the marital trust.

¶ 9    On February 22, 1994, Edward Bozett, who served as the original trust officer, sent a letter to Kathryn enclosing, *inter alia*, a list of the assets held prior to funding the sub-trusts. Fred Moore subsequently replaced Bozett as the trust officer, and, on April 12, 1994, Kathryn sent Moore a letter requesting that each beneficiary of the sub-trusts receive periodic notifications for the status of the trusts, which she later defined as "transactions, changes in value of the trust, changes in fee structure, changes in trust officers assigned to manage the trust, etc." On May 15, 1994, Kathryn sent another letter to Moore wherein she expressed her disappointment that she had not received a response until the day prior with an accounting statement for the marital trust. Kathryn expressed further concern that she had not received an accounting for the family trust, and again requested the same and "any explanation that is appropriate to explain any transactions, changes, etc. in the trust ***."

¶ 10    On June 1, 1994, Timothy Kadlec, a trust investment officer, sent Kathryn a letter informing her that Moore was no longer the trust officer and that Gary Martin would be responsible for the trust administration until a suitable replacement was found. Kadlec enclosed accounting statements for the family trust, noting that Kathryn was a primary beneficiary. On June 8, 1994, Steve Davidson, Kathryn's husband, sent a letter to Kadlec outlining his concern that the family and marital trusts were underfunded and certain monies were unaccounted for. On November 1, 1994, Betty sent a letter to Kathryn stating, *inter alia*, "It is scary to see what is happening with

3

our trusts and I, like you, hope they get someone else in the trust dept. I wish they would get Ed Bozett back but I doubt that he would come back even if they offered the job."

¶ 11    A letter dated August 1995 from Kathryn to Laura Dudley, then-vice president, thanked Dudley for an updated trust report and letter of introduction. Kathryn expressed that she was "pleased that the trust seem[ed] to be in order." She requested, *inter alia*, that copies of tax filings be sent along with the quarterly reports. On August 9, 1995, Dudley responded that they were unable to provide a copy of tax information to each beneficiary or remainderman unless there was a specific reason to do so, explaining that their tax department prepared taxes for over 5,000 trust accounts.

¶ 12    Betty died on March 10, 2023, without appointing any remaining balance of the marital trust in her will. Shortly thereafter, Kathryn e-mailed the then-trust officer, Ann Hucek Burress, requesting information about the marital trust. Burress responded that it would "take some digging," considering it had been 28 years. She stated, "I wish you had questioned the account at any time during the past several years after you stopped receiving statements for that account." Burress continued,

> "The only thing we can do [i]s to hope that the fiduciary tax area still has files from that long ago, as our records drop off of our trust accounting system much sooner than that. Especially if an account was closed twenty-some years ago, files may no longer be in existence. However, I did contact the fiduciary tax division and will be curious to hear what information they may have. I will certainly let you know what I learn."

Kathryn replied that they never received any reports for the marital trust and that they assumed the "technical legal structure" limited its reporting to Betty. On May 4, 2023, Burress wrote,

4

"There is no Marital Trust. We have checked tax records, and bank records, and there is no Marital Trust. There are no closed files, which means that the trust was closed over 7 years ago, and likely more than that. There are no files in storage as it is a bank rule to destroy files after 10 years being closed."

¶ 13    Turning to the underlying litigation, on October 23, 2023, Kathryn and Barbara filed a petition for accounting and breach of fiduciary duty in their individual capacities against U.S. Bancorp Investments, Inc. They subsequently filed a motion to voluntarily dismiss, explaining that they misidentified the company managing the trusts. Petitioners sought and were granted leave to file an amended complaint naming U.S. Bank as the responding party. On December 7, 2023, petitioners filed their first amended petition, again setting forth in their individual capacities claims for an accounting and breach of fiduciary duty.

¶ 14    On January 10, 2024, U.S. Bank filed a combined motion to dismiss the first amended petition pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Citing section 2-615 of the Code (*Id.* § 2-615)), U.S. Bank argued that petitioners failed to state a claim because neither Kathryn nor Barbara were beneficiaries of the marital trust and, therefore, U.S. Bank did not owe them an accounting or a fiduciary duty. U.S. Bank also relied on these facts to argue that petitioners did not have standing to bring their claims, rendering dismissal pursuant to section 2-619(a)(9) of the Code (*Id.* § 2-619(a)(9)) appropriate. Finally, U.S. Bank argued that the claims were barred by the applicable statutes of limitations and were subject to dismissal pursuant to section 2-619(a)(5) of the Code (*Id.* § 2-619(a)(5)).

¶ 15    At the hearing on U.S. Bank's motion to dismiss, petitioners argued that whether the marital trust exists remained a question of fact that could not yet be resolved and that, given the high turnover of trust officers, it was "conceivable at least that *** somewhere along the line ***

5

somebody did something with the trust assets, you know, recharacterized them. We just don't know." They asked to be afforded the opportunity to investigate further to find out what happened and determine whether U.S. Bank failed to keep adequate records. The court expressed concern that petitioners were shifting the burden onto U.S. Bank and questioned how "less-than-ideal recordkeeping form[ed] a cause of action in this case[.]" While the court understood petitioners' desire to have finality regarding the marital trust, it noted that it could not control U.S. Bank's document retention policies. The court further emphasized that "it is Petitioners' job to go ahead and plead facts, as opposed to U.S. Bank putting evidence on at the pleading stage." The court dismissed the first amended petition without prejudice pursuant to section 2-615 of the Code.

¶ 16 On May 22, 2024, the operative two-count second amended petition (petition) was filed by Kathryn and Barbara, this time derivatively and on behalf of the family trust. Relying on sections 11(a) and (b) of the Illinois Trusts and Trustees Act (760 ILCS 5/11(a), (b) (West 2018)) (repealed by Pub. Act. 101-48, § 1505 (eff. Jan. 1, 2020)) (trustees must furnish an annual accounting to the beneficiaries then entitled to receive or receiving income from the trust and, upon termination, a final accounting to the beneficiaries then entitled to distributions), petitioners alleged that the family trust became the vested remainder beneficiary of the marital trust upon Betty's death and, therefore, was entitled to an accounting of the marital trust.

¶ 17 Petitioners continued that U.S. Bank had a fiduciary duty to maintain adequate records regarding all trust activities, including the administration of the marital trust, and that

> "[i]n the absence of any documented evidence the Marital Trust assets were distributed or the trust terminated, and in the absence of evidence that the bank has exhausted its efforts to investigate all available sources of possible information, including the IRS, the continued existence of the Martial [*sic*] Trust must be presumed."

6

Petitioners described U.S. Bank's fiduciary duty as the duty to "preserve and maintain the assets of the Marital Trust, to properly account to the beneficiaries entitled by law to such accountings, and to administer the trust assets in accordance with the terms set forth in the Marial [*sic*] Trust," as well as "to maintain adequate records regarding *all* its trust administration activities." (Emphasis in original.) Petitioners also argued that, as the trustee of the family trust, U.S. Bank had a fiduciary obligation to thoroughly investigate and identify any assets belonging to the family trust, including through its own records and external information. Petitioners alleged that U.S. Bank breached its fiduciary duty to the family trust by "fail[ing] and refus[ing] to provide an accounting to the Family Trust of any remaining income or assets from the Marital Trust," noting U.S. Bank's "conce[ssion]" that it did not have any records regarding the administration of the marital trust, any written requests submitted by Betty for distributions of the principal of the marital trust, or any documentary evidence of the termination of the marital trust during Betty's lifetime. Petitioners alleged that U.S. Bank's breach of fiduciary duty resulted in damages to the family trust "to the extent that assets that should have been preserved and distributed from the Marital Trust to the Family Trust upon Betty Jo Stallard's death, cannot be presently identified or accounted for." Petitioners claimed damages in the amount of $93,734 (the original amount with which the marital trust was funded), plus interest or any other reasonable investment return, reasoning that it must be presumed that those assets remained in the marital trust barring any evidence to the contrary. Petitioners also sought attorney fees. Attached as exhibits to the petition were the restatement, Betty's will, and the communications discussed *supra* ¶¶ 9-12.

¶ 18    On July 12, 2024, U.S. Bank filed a second combined motion to dismiss pursuant to section 2-619.1 of the Code. U.S. Bank again argued for dismissal pursuant to section 2-619(a)(9) (claim asserted is barred by other affirmative matters avoiding the legal effect of or defeating the claim),

7

alleging that petitioners lacked standing because they were not beneficiaries of the marital trust, which was subject to Betty's unrestricted control and depleted during her life, and therefore could not demand an accounting thereof. U.S. Bank quoted section 813.2(b) of the Illinois Trust Code (Trust Code) (760 ILCS 3/813.2(b) (West 2022)) (trustees shall furnish annual accounting statements to beneficiaries "*then entitled* to receive or receiving the income from the trust estate, or if none, then those beneficiaries eligible to have the benefit of the income from the trust estate") (emphasis added), which replaced the Illinois Trusts and Trustees Act. U.S. Bank argued that petitioners were not entitled to an accounting because the family trust, and not petitioners individually, were entitled to the remaining assets of the marital trust. Therefore, U.S. Bank concluded that it did not owe petitioners a fiduciary duty in relation to the marital trust and petitioners lacked standing to demand an accounting of the marital trust. Furthermore, citing section 813.2(c)'s requirement that the trustee "furnish to the beneficiaries then entitled to distribution of the trust estate a final account ***" (*Id.* § 813.2(c)), U.S. Bank contended that Betty was the only individual entitled to the distribution of the marital trust during her lifetime and, therefore, was the only beneficiary entitled to an accounting upon its termination. Therefore, petitioners "could never be entitled to an accounting."

¶ 19        U.S. Bank next argued for dismissal of the petition pursuant to section 2-619(a)(5) of the Code because the claims therein were barred by statutes of limitations. As to petitioners' claim for accounting, U.S. Bank contended that section 1005(a)(2) of the Trust Code (760 ILCS 3/1005(a)(2) (West 2022)) (a beneficiary must commence a proceeding against the trustee within three years after the date the current or final account is furnished) prohibited petitioners' claims because the petitioners raised concerns regarding marital trust and its funding in 1994 and were therefore on notice of their claims at that time. Notwithstanding, U.S. Bank continued, they failed

to assert their claims for nearly 30 years. U.S. Bank further argued that petitioners' breach of fiduciary duty claim was barred by section 1005(b) of the Trust Code (*Id.* § 1005(b)) (beneficiary must commence a judicial proceeding against a trustee for breach of trust within 5 years after the termination of the trust) for the same reasons.

¶ 20 And finally, relying upon section 2-615 of the Code, U.S. Bank contended that the petition failed to state a claim because U.S. Bank did not owe petitioners a fiduciary duty or duty of accounting since they never became beneficiaries of the marital trust. U.S. Bank emphasized that petitioners did not allege facts that, even if true, would establish that they were beneficiaries entitled to receive information under section 813.2 of the Trust Code. U.S. Bank further sought sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and legal costs and fees pursuant to section 1004 of the Trust Code (760 ILCS 3/1004 (West 2022)).

¶ 21 In response, petitioners characterized the determinative issue as being whether the marital trust remained in existence when Betty died, which they argued was a disputed question of fact that could not be decided on a motion to dismiss. Petitioners contended that any inferences regarding U.S. Bank's lack of trust records were to be construed in petitioners' favor. Petitioners countered U.S. Bank's standing argument by noting that petitioners now brought their claim derivatively on behalf of the family trust, rather than individually. Petitioners further rejected U.S. Bank's argument that their claims were barred by the applicable statute of limitations, reasoning that it relies upon an improper factual determination regarding the termination of the marital trust and that their claims did not arise until the family trust became a beneficiary of the marital trust upon Betty's death. Finally, petitioners denied that they failed to state a claim and that sanctions or an award of attorney fees were warranted.

¶ 22      In reply, U.S. Bank emphasized that, *inter alia*, neither petitioners *nor* the family trust could have a vested interest in the unappointed remainder assets of the marital trust upon Betty's death "because such an interest could not possibly have vested, as there are *no factual* allegations in the [petition] *** that the Marital Trust existed at the time of Betty Jo's death, or that assets remained in the Marital [Trust] that vested in and therefore benefited the Family Trust." (Emphasis in original.) U.S. Bank contended that the petition contained nothing more than conclusory allegations, as opposed to "ultimate facts that satisfy the elements of a claim."

¶ 23      Following a hearing, the court granted U.S. Bank's motion to dismiss "in its entirety, except that [U.S. Bank]'s request for sanctions [was] denied." In its oral ruling, the court noted that it was granting the motion to dismiss for lack of standing and for failure to state a claim. The court agreed that petitioners failed to plead facts to show that the trust did not extinguish during Betty's life. The court concluded that there were no facts to establish standing, damages, or breach of fiduciary duty. The petition was dismissed with prejudice.

¶ 24      Petitioners timely appealed.

¶ 25                        II. ANALYSIS

¶ 26      On appeal, petitioners again characterize the central issue as whether the uncertainty regarding the existence of the marital trust at the time of Betty's death precluded dismissal of their petition. They contend that dismissal was improper because they alleged facts sufficient to state causes of action for accounting and breach of fiduciary duty, they have standing to pursue their claims, and they brought their claims within the applicable statutes of limitations.

¶ 27      We initially consider dismissal pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss challenges a complaint as being legally deficient on its face. *M.U. v. Team Illinois Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶ 16. In examining the motion, "the court

10

must accept as true all well-pleaded facts and any reasonable inferences drawn from those facts" and "construe the well-pleaded facts in a light most favorable to the plaintiff." *Id.* However, a court need not reach unreasonable and unwarranted conclusions or inferences in order to sustain the sufficiency of the complaint. *Leekha v. Wentcher*, 224 Ill. App. 3d 342, 352 (1991). "Although plaintiffs are not required to set forth evidence in a complaint, they also cannot set forth 'simply conclusions.' " *Tyrka v. Glenview Ridge Condominium Ass'n*, 2014 IL App (1st) 132762, ¶ 34 (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006)). "Conclusions of fact or law unsupported by any allegation of specific facts on which these conclusions rest are insufficient to withstand a motion to dismiss." *Kaczka v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 702, 707 (2010). Indeed, when ruling on a 2-615 motion to dismiss, "a court *must* disregard the conclusions that are pleaded and look only to well-pleaded facts to determine whether they are sufficient to state a cause of action against the defendant." (Emphasis added.) *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004). "If not, the motion must be granted, 'regardless of how many conclusions the count may contain and regardless of whether or not they inform the defendant in general way of the nature of the claim against him.' " *Id.* at 368-69 (quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 426 (1981)). We review an order granting a section 2-615 motion to dismiss *de novo*. *M.U.*, 2022 IL App (2d) 210568, ¶ 16.

¶ 28       We first address whether petitioners adequately stated a claim for accounting. Petitioners brought their claim for accounting pursuant to section 11 of the Illinois Trusts and Trustees Act (760 ILCS 5/11 (West 2018)) (repealed by Pub. Act. 101-48, § 1505 (eff. Jan 1, 2020)). However, effective January 1, 2020, section 813.2 of the Trust Code (760 ILCS 3/813.2 (West 2022)), provides the statutory authority for a trustee's duty to furnish an accounting for pre-2020 trusts,

11

and the parties both rely upon section 813.2 in their arguments on appeal. Pursuant to section 813.2,

> "(b) *Every trustee at least annually shall furnish to the beneficiaries then entitled to receive or receiving the income from the trust estate*, or, if none, then to those beneficiaries eligible to have the benefit of the income from the trust estate, a current account showing the receipts, disbursements, and inventory of the trust estate.
>
> (c) *Every trustee shall on termination of the trust furnish to the beneficiaries then entitled to distribution of the trust estate* a final account for the period from the date of the last current account to the date of distribution showing the inventory of the trust estate, the receipts, disbursements, and distributions and shall make available to the beneficiaries copies of prior accounts not previously furnished." (Emphases added.) *Id.*

Accordingly, to qualify for an accounting under this framework, petitioners must have pled facts to establish that they were beneficiaries "then entitled" to receive income or, in the event of termination, entitled to distributions, from the marital trust. *Id*; *Sanders v. Stasi*, 2011 IL App (4th) 100750, ¶ 22 ("The first step of the inquiry is determining whether any beneficiary is entitled to receive or is receiving trust income.") Pursuant to the terms of the restatement, the family trust would only become entitled to income or distributions from the marital trust if (1) the marital trust remained funded and in existence at Betty's death and (2) Betty did not appoint any remaining balance of the marital trust in her will.

¶ 29    The petition sets forth in a conclusory fashion that the family trust became a vested beneficiary of the marital trust, and thus entitled to an accounting, explaining,

> "[i]n the absence of any documented evidence the Marital Trust assets were distributed or the trust terminated, and in the absence of evidence that the bank has exhausted its efforts

12

to investigate all available sources of possible information, including the IRS, the continued existence of the Martial [*sic*] Trust must be presumed."

However, as noted by the trial court, this argued inference reflects an improper shifting of the burden away from the petitioners to state facts sufficient to support a claim for accounting and onto U.S. Bank to prove a negative—that the marital trust did not exist at the time of Betty's death. Instead, we must consider the factual allegations set forth in the petition to determine whether, if true, the conclusion endorsed by petitioners—that the marital trust did not terminate during Betty's life and, therefore, the family trust became a beneficiary "then entitled" to income or distributions at Betty's death—is reasonable and warranted. See *Leekha*, 224 Ill. App. 3d at 352.

¶ 30      Initially, we note that the petition highlights the frequent turnover of trust officers and infers that it led to inadequate recordkeeping, which in turn supports the conclusion of the continued undocumented existence or mismanagement of the marital trust. In their opening appellate brief, petitioners offer additional theories to explain the absence of documents: mismanagement, policy lapses, U.S. Bank's administrative instability, employee negligence, or data breaches. Under these scenarios, because the marital trust is presumed to remain in existence, the family trust became a beneficiary entitled to an accounting upon Betty's death. Petitioners argue that these alternative theories are "at least as reasonable as U[.]S[.] Bank's inference" that the marital trust terminated during Betty's life more than 10 years prior to Kathryn's request for documentation following Betty's death.

¶ 31      Although petitioners' unease regarding the turnover of trust officers and lack of documentation demonstrating the termination of the marital trust is understandable, it remains to be seen how the discussions between the parties regarding the administrative changes in trust officers (as outlined in detail in the petition) ultimately support the conclusions offered by

13

petitioners. This is particularly true when viewed in conjunction with the other facts alleged in the petition—Burress's emails explaining U.S. Bank's 10-year document retention policy, the amount of funds originally placed in the marital trust, and Betty's unfettered access to the income and principal thereof for what would have been up to 28 years. Indeed, per Kathryn's August 1995 letter that was sent *after* multiple replacements of trust officers, she was satisfied that the "trust seem[ed] to be in order." While it is unclear whether she was referencing the family trust or marital trust, her letter nonetheless supports the determination that the petition is devoid of any facts to suggest that U.S. Bank's lack of records is due to any wrongdoing, the marital trust continues to exist, or the family trust ever became a beneficiary entitled to an accounting.

¶ 32 Quoting *In re Estate of Winston*, 99 Ill. App. 3d 278, 288 (1981), petitioners emphasize that "a trustee is a fiduciary and is bound to keep clear, distinct, and accurate records of all dealings with the estate or trust assets put in her possession, and her *failure to do so creates a strong presumption against the propriety of any such dealings*." (Emphasis added.) While this presumption is correctly stated, it is triggered by a trustee's *failure* to keep clear, distinct, and accurate records. The fact remains that petitioners did not allege facts that reasonably support the conclusion that U.S. Bank's recordkeeping was deficient beyond falling short of petitioners' personal preferences.

¶ 33 Simply put, petitioners pled unwarranted inferences to reach otherwise unsupported conclusions. Petitioners' argument rests more on what U.S. Bank cannot or did not prove, as opposed to what facts petitioners alleged to bring their claim within a recognized cause of action. Petitioners failed to allege facts sufficient to establish that the family trust was at any point entitled to an accounting under section 813.2 of the Trust Code, and a court "must disregard the conclusions that are pleaded and look only to well-pleaded facts to determine whether they are sufficient to

14

state a cause of action against the defendant." *Beretta U.S.A. Corp.*, 213 Ill. 2d at 368. We therefore affirm the trial court's dismissal of petitioners' claim for accounting pursuant to section 2-615 of the Code.

¶ 34    In affirming the dismissal of petitioners' accounting claim, we note parenthetically that, in their opening appellant brief, petitioners quote both section 813.2 of the Trust Code, as well as the elements for stating a claim for an accounting in equity and, at least partially, frame their argument within the elements of an equitable claim. However, the petition makes no mention of an equitable claim and, instead, relies solely upon section 11 of the Illinois Trusts and Trustees Act to assert the family trust's right to an accounting as a beneficiary "then entitled" to the income from or distributions of the marital trust following Betty's death. ("The Family Trust is currently entitled to an accounting of the Marital Trust from its trustee pursuant to 760 ILCS 5/11."). We therefore decline petitioners' invitation to consider whether they pled facts sufficient to sustain an equitable claim for accounting raised for the first time on appeal. *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 33 (a claim that is not brought before the trial court cannot be raised for the first time on appeal).

¶ 35    Petitioners next challenge the trial court's dismissal of their breach of fiduciary duty claim. A claim for breach of fiduciary duty must contain allegations that satisfy the following elements: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; (3) and that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. Failure to establish any of these elements warrants dismissal of petitioner's fiduciary duty claim. See *Doe v. Roe*, 289 Ill. App. 3d 116, 123 (1997).

¶ 36    Ultimately, petitioners did not allege facts sufficient to support the element of breach in their fiduciary duty claim. Distilled, petitioners again contend that it should be presumed, based

on U.S. Bank's lack of documentation, that U.S. Bank breached its fiduciary duty to maintain adequate records unless it can prove otherwise. However, as with petitioners' claim for accounting, this argument improperly shifts the burden onto U.S. Bank to prove a negative and runs contrary to the general rule that "a trustee is presumed to have acted in good faith and to have performed his duties under the trust. The burden of proving his breach of trust rests upon the one asserting it." *Elmhurst National Bank v. Glos*, 99 Ill. App. 2d 74, 80 (1968). Petitioners cite no statutory provision or other authority in their petition to allege that U.S. Bank's stated procedure of purging records after 10 years passes after the closing of an account is somehow improper. Because petitioners failed to allege facts showing that U.S. Bank breached any fiduciary duty it may have owed to the family trust, we affirm the dismissal of their breach of fiduciary duty claim pursuant to section 2-615 of the Code.

¶ 37    Because the petition was properly dismissed pursuant to section 2-615 of the Code for failure to state a claim, we need not address the propriety of dismissal pursuant to sections 2-619(a)(5) (statute of limitations) or (9) (standing).

¶ 38                                          III. CONCLUSION

¶ 39    For the reasons stated herein, we affirm the judgment of the circuit court of Du Page County.

¶ 40    Affirmed.

16