**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250045-U

Order filed May 6, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| MERAJ FATIMA, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0045 |
| | ) | Circuit No. 24-EV-2021 |
| | ) | |
| HABIBUDDIN AHMED KHAN, | ) | Honorable |
| | ) | Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) Circuit court did not err when it denied appellant's motion to consolidate; (2) testimony not related to ownership was properly excluded; (3) appellant is not automatically entitled to relief after proving performance bars the application of the statute of frauds; (4) appellant did not sufficiently prove ownership under the theories of adverse possession and constructive trust.

¶ 2     Defendant, Habibuddin Ahmed Khan, appeals the Du Page County circuit court decision granting plaintiff, Meraj Fatima, possession of the condominium in which he resides. He raises several issues on appeal, including that the court improperly ruled that he had not sufficiently

proved that there was an oral agreement to purchase the property from Fatima and had fulfilled his end of the bargain. He also argues that the court erred when it denied his motion to consolidate and excluded certain testimony during trial. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4        Fatima purchased a condominium in Carol Stream, Illinois, on October 25, 2012, for $43,000, taking title in joint tenancy with her husband, Mohammed S. Ahmed. Fatima's mother lived at the residence after purchase, as did Khan, her husband and Fatima's biological father. Fatima's mother died in February 2023.

¶ 5        Fatima sought to evict Khan from the property after her mother's death and sent Khan a "notice" in December 2023 demanding that he vacate the premises by April 1, 2024. Khan refused, maintaining that he had an oral agreement with Fatima to repay the purchase price within one calendar year of the purchase, after which he would become the owner of the property.

¶ 6        The eviction complaint was filed on June 13, 2024. Khan filed a motion to consolidate this matter with an action pending against Fatima in the chancery division alleging that he was the rightful owner of the condominium. The motion to consolidate did not include the chancery division complaint as an exhibit, nor did it explain the allegations contained therein. The motion to consolidate was denied.

¶ 7        Khan then filed an answer to Fatima's complaint which included six affirmative defenses and a four-count counterclaim. He alleged causes of action for adverse possession based upon payment of property taxes and homeowners association (HOA) fees for a period exceeding seven years, a declaratory judgment that he was the owner of the unit, constructive trust, and an accounting for the funds he alleged he paid in connection with the property. Khan held fast throughout his answer that he had an oral agreement to purchase the unit from Fatima.

2

¶ 8        The matter proceeded to bench trial on December 3, 2024. Fatima testified that she purchased the condominium in 2012 for $43,000 to lease to her mother. She knew that Khan lived in the unit with her mother during her life. There was no written lease. Khan and Fatima's mother did not pay rent. They did, however, pay the property taxes and HOA fees. Fatima denied she had an agreement with Khan for the purchase of the property.

¶ 9        Fatima's mother resided in the condominium with Kahn from the purchase in 2012 until she passed away in February 2023. After her mother's death, Fatima provided Kahn with two notices to vacate the premises before filing the complaint in this matter.

¶ 10        A special warranty deed granting Fatima and her husband title to the property was admitted into evidence. Her husband's testimony largely mirrored that of Fatima.

¶ 11        Khan testified that he and Fatima's mother lived at the residence with the oral understanding that he would purchase it from Fatima. His asserted proof of ownership included the payment of approximately $36,000 to Fatima and his payments for the property taxes and HOA fees. While he testified that he made payments toward the purchase price, he also testified that he gave Fatima and her family "[c]hecks or money orders for rent."

¶ 12        The court sustained several objections during the cross-examination of Fatima and excluded testimony and documentation regarding whether Fatima attended the closing, finding that it was not relevant to the issue of ownership. It concluded that evidence demonstrating that Kahn paid the property taxes and HOA fees was also irrelevant to ownership.

¶ 13        Khan attempted to introduce several checks and money orders he alleged evidenced payments toward the purchase price. Khan's exhibit 9 was a check written by his nephew to Fatima. Khan stated that he gave his nephew the money to write the check in order to make a payment on his behalf. That check appears to include the words "India Expenses" in the memo.

3

Similarly, exhibit 10 was a money order receipt payable to Fatima's son, Salman S. Ahmed. Khan testified he intended it to be sent to Fatima to go toward the purchase price of the condominium. The court excluded exhibit 9 based on Fatima's hearsay objection because a third party wrote the check. Exhibit 10 was excluded based on an objection for lack of foundation and relevance because the check was not paid directly to Fatima. Exhibits 13 and 16 were copies of bank deposit slips that Khan alleged showed that he deposited several thousand dollars into Fatima's account. The court declined to admit these exhibits because they lacked foundation to establish that Khan deposited the money and that the accounts into which the deposits were made were Fatima's.

¶ 14 Khan's other daughter, Firdaus Fatima, testified that there was an agreement among their family members that one of Khan's children would purchase the property and Khan would then pay the amount back to obtain ownership. Firdaus was financially unable to fund the purchase, so Fatima agreed to do so. Firdaus did, however, contribute $4,100 in earnest money.

¶ 15 The court issued a letter opinion on January 8, 2025, awarding Fatima possession of the residence. It concluded that Kahn's handwritten note dated June 3, 2013, which indicated "Total deposited so far *** [$]33,000," was not corroborated by the evidence and was therefore unreliable. It concluded that the other evidence properly before it offered by Kahn did not demonstrate full payment and performance of the oral agreement he alleged.

¶ 16 It found Firdaus the most credible witness and that she corroborated Khan's assertion that there was an oral agreement. However, it also applied the statute of frauds doctrine, which required a written document showing Khan's agreement with Fatima to purchase the condominium, and no such document existed.

¶ 17 Addressing the issue of adverse possession, the court noted that Kahn relied largely on the fact that he paid the property taxes to support that claim. However, it found that the payment of

4

property taxes did not satisfy the requirement that color of title be evidenced by a document purporting to grant title.

¶ 18     It next addressed Khan's constructive trust claim, finding that Khan failed to prove fraud, duress, coercion, or mistake that is necessary to sustain that claim.

¶ 19     While the court awarded Fatima possession of the property, it also awarded Khan $22,383 under the theory of quantum meruit. It found the parties likely had an oral contract but Khan failed to provide proof he fully performed under that agreement. After subtracting all the payments that Khan alleged were made that were not admitted or otherwise corroborated, the court determined that he proved partial performance under the oral contract by paying Fatima $22,383 toward the purchase price. Given the absence of full performance within the one-year period alleged by Kahn, the court found the evidence was insufficient to award specific performance. It concluded, however, that it would not be equitable for Fatima to keep the money and ordered it reimbursed.

¶ 20     The eviction order required Khan to vacate the premises on or before January 17, 2025. Khan filed his notice of appeal and a motion to stay possession pending appeal. This court granted the motion to stay and ordered a $10,000 appeal bond.

¶ 21                                II. ANALYSIS

¶ 22     Khan argues on appeal that the court erred when it denied his motion to consolidate and when it excluded certain evidence at trial. He also contends that he sufficiently proved substantial or partial performance to circumvent the statute of frauds and that he provided sufficient evidence to prove his adverse possession and constructive trust claims. We address each of these arguments in turn.

¶ 23                            A. Motion to Consolidate

¶ 24 Khan first argues that the circuit court improperly denied his motion to consolidate this case with the chancery case because his chancery complaint presented the same issues as those in the eviction matter. He contends that consolidation should have been ordered to avoid the possibility of inconsistent judgments.

¶ 25 Section 2-1006 of the Code of Civil Procedure (Code) provides that "[a]n action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2024). Consolidation is proper when the cases involve identical issues and the failure to consolidate could result in inconsistent judgments. *Charles v. Gore*, 248 Ill. App. 3d 441, 446-47 (1993). The circuit court has broad discretion in deciding whether to grant a motion to consolidate; we will not disturb that decision absent an abuse of discretion. *Turner v. Williams*, 326 Ill. App. 3d 541, 546 (2001). A court abuses its discretion when no reasonable person would agree with its decision. *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 26 Here, the complaint for the chancery case was not attached to Khan's motion to consolidate. Further, the motion did not explain the allegations or issues involved in the chancery complaint. While Khan has included the complaint in the appendix of the first brief he filed which was ultimately stricken, we are unable to consider it. It is well settled that the record on appeal cannot be supplemented by simply including an item in the appendix. *In re Parentage of Melton*, 321 Ill. App. 3d 823, 826 (2001). A reviewing court will not supplement the record with documents attached to the appellant's brief on appeal as an appendix where there is no stipulation between the parties to do so. *Pikovsky v. 8440–8460 North Skokie Boulevard Condominium Ass'n*, 2011 IL App (1st) 103742, ¶ 16. As such, the chancery complaint is not part of the record on appeal.

6

¶ 27 "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error[.]" *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* at 392. In this case, there is no record of the contents of the chancery complaint for us to determine whether consolidation would have been appropriate. Therefore, there is no basis on which we could determine that the circuit court abused its discretion in denying the motion to consolidate. *Id.* Accordingly, we presume the circuit court followed the law and that the order it entered was proper. See *id.*

¶ 28 Even were the chancery complaint of record and mirrored the counterclaim herein, Kahn ignores the precedent that forcible entry and detainer actions are intended to be summary in nature, limited to the determination of the right of possession in which title disputes are not to be litigated. *Central Terrace Co-Operative v. Martin,* 211 Ill. App. 3d 130, 134 (1991) (Reversing trial court's grant of possession to cooperative in forcible entry and detainer action where trial court adjudicated both possessory rights and ownership rights.). The cases Khan cites in support of consolidation do not involve forcible entry and detainer actions and are otherwise factually distinguishable. See, *e.g.*, *Turner v. Williams* 326 Ill. App. 3d 541, 544 (2001) (A motion to consolidate a negligence action and wrongful death action arising out of a vehicular collision to consolidate a negligence action should have been granted where the claims were based on the same evidence of liability and were only distinguished by the measure of damages sought.); *Charles*, 284 Ill App 3d at 447 (Motion was properly granted to consolidate a cause seeking to revive a judgment and a declaratory judgment asserting the judgment was void and there was no judgment to revive.); *Djomlija v. Urban,* 107 Ill App 3d, 960, 968 (1982) (A suit for specific performance of a written contract to purchase real estate was appropriately consolidated with a declaratory judgment action seeking a

7

determination that the same contract was null and void due to purchasers' failure to obtain a timely mortgage commitment.).

¶ 29                                    B. Testimony

¶ 30         Next, Khan contends the court abused its discretion by excluding certain testimony he attempted to present at trial. Specifically, he argues the court did not allow him to present testimony regarding where Fatima lived, if she attended the closing, and who paid the HOA fees and property taxes. He also argues that the court improperly excluded exhibits 9 and 10 because they showed payments he made to Fatima in furtherance of their oral agreement.

¶ 31         While the court did sustain objections during counsel's cross examination of Fatima concerning whether she attended the closing and signed the closing documents herself, Kahn and Firdaus testified without objection in Kahn's case-in-chief that Fatima and her husband did not attend the closing. The settlement statement demonstrating it was signed by an agent of Fatima and her husband was admitted into evidence. Moreover, Kahn, Fatima, and her husband each presented testimony establishing that Kahn paid the real estate taxes, homeowners insurance, and HOA fees. As such, we need not consider the arguments concerning each of those purported issues. However, the court did sustain objections to counsel's cross examination of Fatima concerning where she lived, finding it irrelevant to the issue of ownership, which we must now consider on appeal.

¶ 32         Whether to admit or exclude evidence is a decision typically left to the discretion of the circuit court. We will not disturb the court's ruling unless we see an abuse of that discretion. *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993). An abuse of discretion is found when no reasonable person would take the view adopted by the court. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). For evidentiary rulings such as this, even if we find the court abused its discretion, we will not reverse

8

unless "the record indicates the existence of substantial prejudice affecting the outcome of the trial." *Id.*

¶ 33    Fatima argues that Khan failed to properly preserve these arguments for appeal because he did not provide an offer of proof regarding any of the testimony he now argues was improperly excluded. See *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773 (2002). "An adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose." *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 451 (2004). Conclusory summaries and speculation without additional support are insufficient. *Id.* Khan contends that there are exceptions to the requirement that an offer of proof must be given to preserve this issue for appeal. Khan fails to identify which exception would apply to this instance, and his purported offer of proof was a mere statement from his attorney that the testimony would tend to show ownership. Instead, Khan offered a conclusory legal conclusion without explanation of what the testimony would be had the court allowed it. However, no offer of proof is necessary when it is apparent to the court the evidence sought to be introduced. *Carter v. Azaran*, 332 Ill. App. 3d 948, 956 (2002). Here, the court excluded testimony concerning where Fatima lived. Khan's attorney argued he wished to present this testimony to show proof of ownership. We find that the character of the evidence and reasons thereof were clear to the circuit court, and that a further offer of proof was unnecessary in this instance. See *id.*

¶ 34    Turning to the testimony and evidence Khan argues were improperly excluded, we find that Khan failed to provide a sufficient argument as to how the court erred by excluding this evidence. Specifically, he failed to provide any reason as to why the testimony regarding Fatima's residence would be relevant and how it could help prove his counterclaims and affirmative defenses, nor does he provide any authority to support this position. See Ill. S. Ct. R. 341(h)(7)

9

(eff. Oct. 1, 2020) (arguments in the brief must contain the party's contentions and reasons therefore, with citations to authority and the record). Additionally, while he argues that the exhibits showing he gave Fatima's son money and his nephew's payment to Fatima for "India Expenses" were relevant to show Khan himself paid Fatima, he does not argue or explain how these exhibits lead to that conclusion. He also has not demonstrated prejudice due to the exclusion. See *Leona W.*, 228 Ill. 2d at 460. Without any argument concerning the purpose of this information and how he was prejudiced as a result of their exclusion, Khan cannot demonstrate the court abused its discretion. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868, 881 (2010) (" '[M]ere contentions, without argument or citation of authority, do not merit consideration on appeal.' " (quoting *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991)).

¶ 35    Moreover, as the court noted, the excluded testimony regarding Fatima's residence did not establish that Khan was the intended owner of the property. See *In re A.W.*, 231 Ill. 2d 241, 256 (2008) ("Evidence is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable."). Khan sought to introduce this testimony to prove that he was the rightful owner of the property at issue. Fatima's residence at the time of closing does not render it more or less likely that she was the owner of the unit.

¶ 36    Kahn further posits that the court erred in excluding exhibit 9, a March 29, 2013, check written by his nephew to Fatima in the sum of $2,000 bearing the memo "India Expenses," and in the court's exclusion of exhibit 10, a money order receipt of April 2, 2013, for $1,000 to Fatima's son at a New Jersey address and which indicates it is "From Meraj Fatima." While Kahn testified the money order was written by him personally and that "we were remaking the payment for them *** [f]or the cost of the condo," the court appears to have found the foundation for these exhibits to be lacking and the fact that he gave his grandson money and his nephew wrote a check to Fatima

10

to be irrelevant. Khan argues in his brief, without citation to authority, they could have been admitted subject to the court's determination of the weight they would be given. It is clear from the record that the court had serious doubts about their probative value and found them to be of little or no evidentiary value. We agree given that Khan did not provide any evidence that the money he gave to Fatima's son was actually given to Fatima and that the check written by his nephew fulfilled the alleged intended purpose of payment for the property on Khan's behalf. In fact, the check written by Khan's nephew indicated that the payment was for "India Expenses," which is in direct contradiction to Khan's assertion that it was for another purpose. It is the province of the circuit court to determine the admission and the weight to be given evidence. See *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). As such, we find that the admission of those exhibits would not have altered the conclusions of the court.

¶ 37    Kahn's brief also takes issue with the exclusion of a November 5, 2012, contact and emergency information form which listed Kahn and his wife as the "Unit Occupants." Khan argues this document establishes Fatima knew Kahn would also occupy the premises from the date of purchase. The court sustained a relevance objection concluding that the document was immaterial to ownership. The court took note, as do we, that there was never a dispute that Kahn occupied the unit with his wife. We conclude that the court did not abuse its discretion in excluding the document. Moreover, the outcome would not have changed had the document been admitted into evidence as it also identified Fatima and her husband in the section calling for "Unit Owner Information."

¶ 38                              C. Statute of Frauds

¶ 39    Khan argues that he presented sufficient evidence of an oral agreement and partial or substantial performance of that agreement to overcome the statute of frauds. He argues that he paid

11

a total of $36,329 to Fatima, and those payments, as well as possession of the property and payment of HOA fees and property taxes demonstrates his partial or substantial performance of a contract to purchase the property from Fatima.

¶ 40     The Illinois statute of frauds provides the following in regard to real estate transactions:

"No action shall be brought to charge any person upon any contract for the sale of land *** for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." 740 ILCS 80/2 (West 2024).

Khan must thus prove an exception to the statute to circumvent the requirement that the contract must be in writing. One such exception is when one party performs his obligations under the oral contract. *Berkowtiz v. Urso*, 2014 IL App (1st) 121662, ¶ 44. Khan argues that his performance under the oral agreement suffices to avoid application of the statue of frauds.

¶ 41     Real estate may be purchased under a verbal contract when a purchaser takes possession, makes improvements, and tenders the purchase price within the agreed upon timeframe. *Blunt v. Tomlin*, 27 Ill. 93, 93 (1862). The rationale is that when one party performs his obligations relying on a contract, " 'it would be unfair to allow the other party to accept the benefits under the cont[r]act but to avoid its reciprocal obligations.' " *Noesges v. Servicemaster Co.*, 233 Ill. App. 3d 158, 163 (1992) (quoting *American College of Surgeons v. Lumbermens Mutual Casualty Co.*, 142 Ill. App. 3d 680, 700 (1986)). Additionally, partial performance may, in certain circumstances, remove an oral contract from the operation of the statute of frauds. *Anderson v. Kohler*, 397 Ill. App. 3d 773, 786 (2009). Partial performance for a real estate contract may be shown when a purchaser made a down payment and several monthly payments towards the purchase price, took

12

possession and made improvements (*Heitz v. Circle Four Realty Co.*, 191 Ill. App. 3d 727, 731-32 (1989)) or paid full price and took possession (*Thomas v. Moore*, 55 Ill. App. 3d 907, 911-12 (1977)).

¶ 42      The existence of an oral contract and the circuit court's determination thereof will be disturbed only if that determination is against the manifest weight of the evidence. *Anderson*, 397 Ill. App. 3d at 785. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 43      Khan contends that he had an oral contract to purchase the condominium from Fatima and that his payments to Fatima are sufficient to prove substantial or partial performance, thereby taking it out of the statute of frauds. We agree with the circuit court that Khan's partial performance "arguably" takes the matter out of the statute of frauds. There is no other reasonable explanation for the payments the court found Khan actually did make to Fatima. We therefore find no error in the court's determination that a contract likely existed.

¶ 44      However, Khan merely proved *the existence* of a contract, not that he is entitled to relief due to a breach of that contract. See, *e.g.*, *Anderson*, 397 Ill. App. 3d at 785 (finding that partial performance may be used to show *the existence* of a contract that would remove the statute of frauds requirement and satisfy the first element of a breach of contract claim). To prevail under a breach of contract, one must show that a contract existed, he has performed all his obligations under the contract, the other party breached the contract, and injury due to the breach. *Sherwood Commons Townshome Owners Ass'n v. DuBois*, 2020 IL App (3d) 180561, ¶ 28.

¶ 45      While Khan established an enforceable contract existed, he has failed to prove the other elements necessary to obtain relief. In fact, Khan has not even made a breach of contract claim—

13

he merely argues that because a contract existed that he partially performed, the statute of frauds no longer applies, and he is entitled to relief.

¶ 46     However, as the circuit court noted, Khan did not perform all his obligations under the contract, as he did not pay the full purchase price within one calendar year of Fatima purchasing the condominium. The court attributed $22,383 in payments to Fatima that could be considered payments toward the property, which amounted to a little more than one half what Fatima paid for the condominium. Khan has not even asserted that he fully performed his obligations under the contract. Rather he argues that he paid an amount "nearly matching" the purchase price. Khan, through his own evidence presented, has shown that he failed to meet his obligations to make full payment within one year of Fatima purchasing the property.

¶ 47     The authority cited by Kahn fails to support his claim in that they rely on either full performance or partial and continuing performance of the obligations under the oral contract. See *e.g., David v. Schilts,* 415 Ill. 545, 555 (1953) (A claim on an oral contract is not barred by the statute of frauds where one party has completed performance.); *Noesges,* 233 Ill. App. 3d at 162, 168 (Circuit court erred in dismissing complaint alleging vendor had completed his obligation to create billing software for vendee to license to its franchisees as evidenced by payments made to vendor for licenses that were issued because complete performance bars the application of the statute of frauds.); *Pendleton v. King,* 55 Ill. App. 3d 1, 2-3 (1977) (Specific performance properly ordered on oral contract for deed to lot where buyer occupied and improved the lot with a mobile home and seller accepted the down payment and monthly payments until seller refused to submit a written contract for deed.); *Heitz,* 191 Ill. App. 3d at 731-732 (Our Third District concluded specific performance of an oral agreement modifying written agreement was not precluded by the statute of frauds where the modification was clear, and the purchaser of land made and seller

14

accepted annual payments consistent with the terms thereof found by the court.). Lastly, Kahn's reliance as persuasive authority on the unpublished Rule 23 order in *Konrath v. Panko*, 2013 IL App (3d) 220131-U, is likewise not supportive of his claim herein. In concluding that a claim for specific performance should have survived a motion to dismiss, it found allegations that the purchaser had continually occupied the premises, paid the mortgage of seller, real estate taxes, and insurance, and the parties and the mortgagee processed a tornado damage claim paid under purchaser's casualty policy insurance were sufficient to plead an exception to the statute of frauds. *Id. ¶ 26.*

¶ 48      It is clear from the record that Kahn did not fully or even substantially perform the alleged oral contract which was to be completed within one year of closing, and as such, there was no ongoing performance. Accordingly, the circuit court was correct in its determination that the statute of frauds did not preclude the claim but that Kahn failed to prove he was entitled to relief because he did not establish full performance. We see no error in the circuit court's findings regarding the statute of frauds.

¶ 49                              D. Adverse Possession

¶ 50      Khan also contends that he has a legal interest in the property by way of adverse possession. Specifically, he claims that he has color of title because he possessed the property, paid the real estate taxes, and had control over the property.

¶ 51      Khan's adverse possession counterclaim utilizes section 13-109 of the Code. Section 13-109 provides:

> "[E]very person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who for 7 successive years continues in such possession, and also, during such time, pays all taxes legally assessed on such lands

15

or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, legacy or descent, before such 7 years have expired, and who continue such possession, and continue to pay the taxes as above set forth so as to complete the possession and payment of taxes for the term above set forth, are entitled to the benefit of this Section." 735 ILCS 5/13-109 (West 2024).

¶ 52 The parties do not dispute actual possession or the payment of taxes for the requisite seven years. The sole dispute is whether Khan did so having "color of title." Khan contends that the oral agreement he had with Fatima is sufficient evidence of color of title, thus he has a valid claim under the theory of adverse possession. He does not present any written instrument that purports to grant him title. Color of title is an instrument or a record that does not actually convey title but appears to have the same effect as a conveyance. *Bergesen v. Clauss*, 15 Ill. 2d 337, 341 (1958). It is not merely a claim of ownership that is technically defective, nor is it meant to be anything other than absolute title. Color of title must show some evidence of claimed ownership by the grantee in the form of some semblance of title, however invalid that claim may be. *Branch v. Lee*, 373 Ill. 333, 335-36 (1940); *Department of Public Works and Buildings v. Klinefelter*, 119 Ill. App. 2d 50, 61 (1970). The key to proving color of title is an instrument or record indicating ownership. *Bergesen*, 15 Ill. 2d at 341.

¶ 53 While he is correct in his assertion that any instrument can provide color of title, Khan fails to point to any document here that would fulfill this requirement. He also fails to present any authority to establish that a written instrument is not the only mode to prove color of title. He merely argues that his actions prove color of title. It is not our responsibility to complete legal

16

research to support an issue inadequately argued by the appellant. See *Walter v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 6; see also *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) (we are not a repository into which the appellant may "foist the burden of argument and research."). Given that Khan did not provide an instrument demonstrating color of title and failed to establish why one was not needed to prove color of title, he failed to prove the required elements to satisfy an adverse possession claim.

¶ 54                                              E. Constructive Trust

¶ 55        Finally, Khan raises constructive trust as a remedy to this cause of action. A constructive trust is created when a court declares the party in possession of wrongfully acquired property the constructive trustee of that property. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293 (1986). It "is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct." *Id.* Such a finding is made because the circumstances dictate that it would be inequitable for that party to retain possession of the property. *Id.* The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary. *Id.* Generally, some form of wrongdoing or unconscionable conduct is a requirement to obtain relief under this theory. However, in recent years, this has been expanded to encompass mistakes in order to avoid cases of unjust enrichment. "[A] constructive trust may be imposed in the case of mistake, although no wrongdoing is involved." *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 299 (2000). In sum, a constructive trust is imposed where actual or constructive fraud is considered as equitable grounds for raising the trust, where there is a fiduciary duty and a subsequent breach of that duty, or when duress, coercion, or mistake is present. *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988).

¶ 56    Again, Khan fails to establish each of the elements required to obtain relief. He argues that there is an oral contract and that he has paid the purchase price, taxes, and HOA fees but presented no evidence of wrongful conduct or mistake. Accordingly, in the absence thereof, the circuit court properly found that Khan failed to sufficiently prove his constructive trust claim.

¶ 57

¶ 58                                III. CONCLUSION

¶ 59    The judgment of the circuit court of Du Page County is affirmed.

¶ 60    Affirmed.